777UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

TEVON THOMAS, MATTHEW NELSON, BILLY HIPPOLYTE, ALISHEA WALTERS, GARY JEANTY, MILTON SEARS, DAVID ALCINDOR , ALONZO SEALEY, SHELDON NYACK, RAVIN COX, ZANDA DEWAR, ALI KETTRLES, HERBY AIME, JOBE LEEMOW, MARKOUS FRAY, DWYTE PILGRIM, BRANDON THOMAS, and RYAN CLYNE,

Plaintiffs,

-against-

THE CITY OF NEW YORK, JOEBIAN ORTIZ, ALREDO SKELTON, JOHN AND JANE DOES 1-10,

Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**COMPLAINT**

**PLAINTIFFS DEMAND A TRIAL BY JURY**

Plaintiffs Tevon Thomas, Matthew Nelson, Billy Hippolyte, Alishea Walters, Gary Jeanty, Milton Sears, David Alcindor , Alonzo Sealey, Sheldon Nyack, Ravin Cox, Zanda Dewar, Ali Kettrles, Herby Aime, Jobe Leemow, Markous Fray, Dwyte Pilgrim, Brandon Thomas, and Ryan Clyne, by their attorneys, Lumer & Neville, hereby allege upon information and belief:

## PARTIES, VENUE and JURISDICTION

1. At all times hereinafter mentioned, each of the afore mentioned plaintiffs were adult residents of Kings County, in the State of New York.

2. At all relevant times hereinafter mentioned, defendant City of New

York ("New York City"), was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York and acts by and through its agencies, employees and agents, including, but not limited to, the New York City Police Department ("NYPD"), and their employees.

3. At all relevant times hereinafter mentioned, defendant Joebian Ortiz (Tax 894360), was employed by the City of New York as a member of the NYPD, or higher, and assigned to Brooklyn South Gang Squad ("BSGS"). Defendant Ortiz is sued herein in his official and individual capacities.

4. At all relevant times hereinafter mentioned, defendant Alfredo Skelton (Shield 29533), was employed by the City of New York as a member of the NYPD, or higher, and assigned to the Emergency Service Unit ("ESU"). Defendant Skelton is sued herein in his official and individual capacities.

5. At all relevant times hereinafter mentioned, defendants John and Jane Does 1-10 were employed by the City of New York as members of the NYPD, but whose identities are not presently known to the plaintiffs. Some of these defendants may have been members of the ESU, others of the BSGS, or another command.

6. This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331, 1343 and 1367, and 42 U.S.C. § 1983.

7. Venue is properly laid, pursuant to 28 U.S.C. Section 1391, et seq. in the Eastern District of New York, where the plaintiffs and defendant City of New York reside, and where the majority of the actions complained of herein occurred.

**RELEVANT FACTS**

8. On May 15, 2014, during the evening hours, each of the plaintiffs was lawfully present inside of or in the backyard of a three-story private residence located at or about 641 East 59 Street, in Brooklyn, New York (the "Premises").

9. At this time, various members of the NYPD arrived at the premises in several NYPD vehicles, entered the premises with guns drawn, and seized each of the plaintiffs, along with other individuals who also present.

10. No warrant was produced and it is not known whether defendants are claiming to have had a warrant, or entered based on a claim of exigency or invitation.

11. At the time of the entry, several of the plaintiffs were present in the backyard of the Premises, others were present throughout the multi-story residence.

12. Skelton and various members of the ESU made the initial entry into the Premises. As they proceeded throughout the Premises, Skelton and his colleagues seized the plaintiffs, and other civilians present in the Premises, handcuffing them and moving them into certain rooms, where they were centralized.

13. None of the plaintiffs were engaged in any unlawful or suspicious activity.

14. Although there was no legal basis to seize the plaintiffs, defendants handcuffed the plaintiffs and took them into custody.

15. The defendants searched the plaintiffs, or caused them to be searched.

The searches yielded no evidence of guns, drugs, or any other contraband.

16. Despite the absence of any evidence of wrongdoing on the part of the plaintiffs, the defendants formally arrested the plaintiffs, as well as numerous other individuals.

17. The decision to seize the plaintiffs and take them into custody was objectively unreasonable under the circumstances.

18. Plaintiffs Matthew Nelson, Billy Hippolyte, Alishea Walters, and Gary Jeanty, were each held for a period of many hours, before defendants released them from custody without being criminally charged.

19. The remaining plaintiffs were formally arrested and charged by the defendants, despite the absence of probable cause for their arrests.

20. All of the plaintiffs were transported to Kings County Central Booking, where they were held in anticipation of arraignment.

21. After a period of many hours, the KCDA declined to prosecute plaintiffs Ali Ketterles, Alonzo Sealey, Brandon Thomas, Dwyte Pilgrim, and Ryan Clyne, and these plaintiffs were released from custody without being criminally charged.

22. While plaintiffs were in defendants' custody, defendant Joebian Ortiz drafted arrest paperwork concerning the arrest of plaintiffs Tevon Thomas, Herby Aime, David Alcindor, Jobe Leemow, and Milton Sears. In this paperwork, Ortiz falsely claimed, in part, that these plaintiffs had jointly possessed more than a pound of marijuana which Ortiz claimed was recovered from a living room closet in the Premises.

23. This claim by Ortiz was materially false, as none of these plaintiffs had actually or constructively possessed this contraband, and as none of the plaintiffs were present in the room where the closet in which the contraband was found was located, and there was no factual basis for Ortiz to reasonably believe these plaintiffs possessed the marijuana.

24. While plaintiffs were in defendants' custody, defendant Joebian Ortiz drafted arrest paperwork concerning the arrest of plaintiffs Markus Fray, Sheldon Nyack, Ravin Cox, and Zanda Dewar. In this paperwork, Ortiz falsely claimed, in part, that these plaintiffs had also jointly possessed more than a pound of marijuana, which Ortiz now sometimes claimed was recovered from the same living room closet, and other times from a book bag inside a bedroom closet.

25. This claim by Ortiz was materially false, as none of these plaintiffs had actually or constructively possessed this contraband, and as none of the plaintiffs were present in the room where the closet in which the contraband was found was located, and there was no factual basis for Ortiz to reasonably believe these plaintiffs possessed the marijuana.

26. Ortiz further claimed that these plaintiffs (Fray, Nyack, Cox, and Dewar) also possessed a loaded and operable handgun, based on the statement he claimed was relayed to him by defendant Skelton, in which Skelton claimed to have found the handgun underneath a sweatshirt underneath plaintiff Fray, after Fray had been placed on the ground.

27. This claim was materially false. As the defendants were well aware, some of the the plaintiffs were seized in various rooms, hallways, and doorways of the Premises, while others were outside when the defendants arrived. All of these plaintiffs were moved and directed into various rooms immediately upon their seizure by the defendants, so that they were searched in rooms and locations other than where they were when the defendants entered. This included Fray, whom the defendants was well aware was seized in a room other than where the gun was found, but was then brought into the bedroom where he was placed, rear-cuffed, on the floor on top of clothing that was already in the room. Any gun that may have been recovered, was not recovered from Fray's possession, and the defendants were well aware of that at the time Ortiz drafted the arrest paperwork.

28. Ortiz then forwarded, or caused to be forwarded, these false statements of fact to the Kings County District Attorney ("KCDA") in order to justify the arrests and to persuade the KCDA to commence the plaintiffs' criminal prosecutions.

29. Ortiz knew and understood that the KCDA was relying on Ortiz and his fellow officers to provide accurate and truthful information, and not to omit evidence or facts that may be favorable to those persons under arrest, or otherwise withhold information or mislead the KCDA in any way with respect to the facts and circumstances surrounding the arrest of the plaintiffs.

30. Notwithstanding this knowledge, Ortiz lied to the KCDA about where plaintiffs were found, where the contraband was found, and the circumstances of the arrests and searches, in order to fabricate a basis for their arrest and prosecution.

31. Ortiz is then believed to have spoken with the KCDA and reiterated and confirmed these false statements to the KCDA to justify the arrests and to persuade the KCDA to initiate the plaintiffs' prosecutions.

32. Based on the fabricated claims of marijuana possession, plaintiffs Tevon Thomas and Herby Aime were each charged with multiple counts of marijuana possession, including at least one felony charge, under docket number 2014KN036196, Milton Sears was similarly charged under 2014KN036188, and David Alcindor and Jobe Leemow under 2014KN036220.

33. Based on the fabricated claims of marijuana and gun possession, plaintiffs Fray and Nyack were each charged with multiple counts of marijuana and weapons possession, including at least one felony charge, under docket number 2014KN036200, Zanda Dewar was similarly charged under 2014KN036178, and Ravin Cox was charged with gun possession under 2014KN036192.

34. As a result of these serious felony charges, many of the plaintiffs were detained at KCCB or at a Department of Corrections facility for a period of several or more days, before they were released.

35. On May 21, 2014, all of the charges for each of the charged plaintiffs (Tevon Thomas, Sears, Alcindor, Nyack, Cox, Dewar, Aime, Leemow, and Fray) were dismissed, and terminated in plaintiffs' favor.

36. At no time did Ortiz take any steps to intervene in, prevent, or otherwise limit the harms caused by his false statements he had made or to limit the

consequences thereof.

37. At no time did Skelton take any steps to intervene in, prevent, or otherwise limit the harms caused by his false statements he had made or to limit the consequences thereof.

38. At no time did the other defendants take any steps to intervene in, prevent, or otherwise limit the misconduct engaged in by Ortiz and Skelton, and/or failed to file accurate or corrective statements, or otherwise failed to report the conduct of the defendants who engaged in the misconduct described herein as required, and at no time did any of these defendants make any effort of any sort to notify the KCDA of the absence of probable cause to arrest these plaintiffs or the falsity of fabricated statements.

39. At no time did there exist any basis to utilize any level of force against the plaintiffs, much less the force actually employed, nor could any of the defendants have reasonably believed that such force was necessary. As a result of the excessive use of force employed by the defendants, several plaintiffs suffered physical injuries.

40. At no time prior to or during the encounter was there probable cause to arrest the plaintiffs.

41. That at all times relevant herein, the defendants were acting within the scope of their employment, and their acts were done in furtherance of the City of New York's interests and without legal justification or excuse.

## FIRST CAUSE OF ACTION

42. Plaintiffs repeat the allegations contained in the preceding paragraphs

above as though stated fully herein.

43. The individual defendants, including the Doe defendants, willfully and intentionally seized, searched, detained, and arrested the plaintiffs without probable cause, and without a reasonable basis to believe such cause existed.

44. The defendants fabricated evidence through the false statements of Ortiz and/or Skelton, to the effect that the plaintiffs were found to be in possession of marijuana and/or a handgun, and forwarded these to the KCDA, causing plaintiffs to be denied their liberty.

45. Defendants further caused plaintiffs Tevon Thomas, Sears, Alcindor, Nyack, Cox, Dewar, Aime, Leemow, and Fray to be maliciously prosecuted.

46. The individual defendants willfully and intentionally subjected plaintiffs to physical force in excess of what was reasonable under the circumstances and caused these plaintiffs to suffer physical injuries, and did so without a reasonable basis to believe that such conduct was appropriate, reasonable, lawful, or necessary.

47. At no time did any of the individual defendants make any reasonable attempt to intervene in the unconstitutional conduct of their fellow officers, and thus further facilitated and tacitly encouraged the continuation of the misconduct.

48. By so doing, the individual defendants, individually and collectively, subjected the plaintiffs to false arrest and imprisonment, excessive force, unlawful searches of person and property, malicious prosecution, and the denial of due process through the fabrication of evidence, and thereby violated and aided and abetted in the violation of the plaintiff's rights under the Fourth, Sixth, and Fourteenth Amendments of the United States

Constitution.

49. By reason thereof, the individual defendants have violated 42 U.S.C. §1983 and caused the plaintiffs to suffer emotional and physical injuries, mental anguish, incarceration and the deprivation of liberty, and the loss of their constitutional rights.

## SECOND CAUSE OF ACTION

50. Plaintiffs repeat the allegations contained in the preceding paragraphs above as though stated fully herein.

51. Defendant City of New York was responsible for ensuring that reasonable and appropriate levels of supervision were in place within and/or over the NYPD.

52. Ortiz's actions in this matter – condoned by and carried out with the approval of the other defendants – were carried out in accordance with an existing plan or policy created or otherwise condoned by the municipal defendant designed to increase the number of arrests made without regard to probable cause.

53. More precisely, under this policy or plan, officers within the Gang Division (of which the defendants' Brooklyn South Gang Squad is a subdivision) would knowingly make arrests of individuals regardless of whether there was any factual basis for the charges. The arresting officer(s) would then make false statements of fact as to seeing the individual(s) being arrested in actual or constructive possession of the contraband in question.

54. The purpose of this policy or plan was to generate large numbers of

arrests to help the NYPD create a false impression of positive activity by their officers.

55. In addition, members of the Gang Division are evaluated, at least in part, on the basis of their "activity" which is measured by the number of arrests made, search warrants secured, and other, similar criteria. Thus, members of the Gang Division routinely make arrests and engage in other police activity without sufficient legal cause in order to raise their levels of "activity" and improve the perception of their job performance.

56. The NYPD generally, and BSGS in particular, tracks the number of arrests made by each officer but does not take into account the outcome of these arrests, even though this information is available to the NYPD. As a result, members of the Gang Division are well aware that (a) they are being evaluated based on, in large part, the number of arrests made, and (b) their supervisors do not care whether these arrests lead to criminal prosecutions, much less convictions.

57. In this case, even if the individual defendants did recover marijuana or a handgun, they engaged in mass arrests of plaintiffs without probable cause as part of parcel of this policy designed to boost their productivity numbers, and then fabricated evidence to attempt to justify the arrests and promote the initiation of the plaintiffs' prosecution.

58. At no time did any of the individual defendants make any reasonable attempt to intervene in the unconstitutional conduct of their fellow officers, and thus further facilitated and tacitly encouraged the continuation of the misconduct, and thereby confirmed the existence of this policy.

59. By reason thereof, the municipal defendant has violated 42 U.S.C. §1983 and caused the plaintiff to suffer emotional and physical injuries, mental anguish,

incarceration and the deprivation of liberty, and the loss of their constitutional rights.

**THIRD CAUSE OF ACTION**

60. Plaintiffs repeat the allegations contained in the preceding paragraphs above as though stated fully herein.

61. Defendant City of New York had actual or constructive knowledge that there was inadequate supervision over and/or within the NYPD with respect to its members' abuse of their authority in terms of making false arrests and lying to prosecutors to cover up said arrests and cause the malicious prosecution of persons wrongly arrested. Despite ample notice of inadequate supervision, defendants took no steps to ensure that reasonable and appropriate levels of supervision were put place to reasonably ensure that NYPD members engaged in police conduct in a lawful and proper manner, including their use of their authority as law enforcement officers with respect to the general public, including, and specifically, the plaintiff herein.

62. Even if the BSGS policy outlined in the Second Cause of Action herein is not a formal policy of the NYPD, supervisory officers within the Organized Crime Control Bureau, which overseas, in part, the Gang Squad and Narcotics Division, is well aware that its members routinely arrest people without any regard for whether probable cause for those arrests exist, and do so to artificially enhance their productivity numbers.

63. As a result of such conduct, generally, scores of citizens are falsely arrested and jailed, and often wrongly prosecuted and, almost certainly, wrongly convicted and imprisoned. Notwithstanding their knowledge of the existence of these informal policies and conduct, the City of New York and the NYPD have failed to take any meaningful steps to supervise, investigate, or discipline the offending officers, and are deliberately indifferent

to the harms this course of conduct has caused and will continue to cause.

64. Therefore the municipal defendant has not only tolerated, but actively fostered a lawless atmosphere within the NYPD and that the City of New York was deliberately indifferent to the risk that the inadequate level of supervision would lead to the violation of individuals' constitutional rights in general, and caused the violation of the plaintiff's rights in particular.

65. The negligent supervision of, in relevant part, Gang Squad officers by the City of New York and the NYPD, have resulted in the violation of the plaintiffs' rights as set forth herein.

66. By reason thereof, the municipal defendant has violated 42 U.S.C. §1983 and caused the plaintiff to suffer emotional and physical injuries, mental anguish, incarceration and the deprivation of liberty, and the loss of their constitutional rights.

**DEMAND FOR A JURY TRIAL**

Pursuant to Fed. R. Civ. P. 38, plaintiffs hereby demand a jury trial of all issues capable of being determined by a jury.

]

]

REMAINDER OF PAGE INTENTIONALLY LEFT BLANK

]

WHEREFORE, the plaintiffs demand judgment against defendants jointly and severally as follows:

i. on the first cause of action, actual and punitive damages in an amount to be determined at trial;

ii. on the second and third causes of action, actual damages in an amount to be determined at trial;

iii. statutory attorney's fees pursuant to, *inter alia*, 42 U.S.C. §1988 and New York common law, disbursements, and costs of this action; and

iv. such other relief as the Court deems just and proper.

Dated: New York, New York
December 26, 2014

LUMER & NEVILLE
Attorneys for Plaintiffs

By: /s/
____________________________

Michael Lumer, Esq.
225 Broadway, Suite 2700
New York, New York 10007
(212) 566-5060