UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
TEVON THOMAS, et al.,

                Plaintiff,

      -against-                   14 CV 7513 (ENV) (VMS)

CITY OF NEW YORK,               **Date of Service: July 3, 2017**

                Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X


**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
THE MOVING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**


LUMER LAW GROUP
225 Broadway, Suite 2700
New York, New York 10007
(212) 566-5060

Attorneys for Moving Plaintiffs
Ravin Cox, Matthew Nelson,
Billy Hippolyte, and Gary Jeanty

<u>Of Counsel</u>
Michael Lumer, Esq.

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES. .................................................................................... iii

PRELIMINARY STATEMENT ................................................................................. 1

STATEMENT OF FACTS. ......................................................................................... 2

STANDARD OF REVIEW .......................................................................................... 6

ARGUMENT. ................................................................................................................ 7

POINT I   PLAINTIFF COX HAS ESTABLISHED THAT HE
          WAS ARRESTED WITHOUT PROBABLE CAUSE
          AND IS THEREFORE ENTITLED TO SUMMARY
          JUDGMENT ON HIS CLAIM FOR FALSE ARREST. ..................... 7

          A.   Defendants Lacked Probable Cause to Arrest
               Ravin Cox For the Handgun in the Closet  . ................................ 8

          B.   Defendants Lacked Probable Cause to Arrest
               Ravin Cox For Possession of Marijuana     . ............................ 10

          C.   Defendants Lacked Probable Cause to Arrest
               Ravin Cox For any Gambling Offenses      . ............................. 11

POINT II  PLAINTIFF COX IS ENTITLED TO SUMMARY
          JUDGMENT AGAINST DEFENDANTS FOR
          MALICIOUS PROSECUTION AND THE DENIAL
          OF THE RIGHT TO A FAIR TRIAL. .................................................. 11

          A.   Defendants Denied Cox The Right to a Fair Trial. .................. 12

          B.   Defendants Caused Cox to be Maliciously Prosecuted     . ..... 14

POINT III PLAINTIFFS NELSON, HIPPOLYTE AND
          JEANTY WERE UNLAWFULLY SEIZED AND
          HELD IN VIOLATION OF THEIR RIGHTS
          UNDER THE FOURTH AMENDMENT AS A
          MATTER OF LAW. ................................................................................ 16

CONCLUSION. ..................................................................... ......................................... 22

# TABLE OF AUTHORITIES

<u>Cases</u>                                                                                                          <u>Page</u>

*Abreu v. City of N.Y.,*
2006 WL 401651 (E.D.N.Y. Feb. 22, 2006). ................................................................. 14

*Bailey v. United States,*
133 S. Ct. 1031 (2013)............................................................................................... 17

*Baker v. Monroe Township,*
50 F.3d 1186 (3d Cir. 1995). ..................................................................................... 18

*Boyd v. City of N.Y.,*
336 F.3d 72 (2d Cir. 2003). ........................................................................................ 15

*Brod v. Omya, Inc.,*
653 F.3d 156 (2d Cir. 2011). ........................................................................................ 6

*Cabral v. City of New York,*
2014 U.S. Dist. LEXIS 131342(S.D.N.Y. Sept. 17, 2014). ................................. 19, 20

*Cammick v. City of New York,*
1998 U.S. Dist. LEXIS 18006 (S.D.N.Y. Nov. 17, 1998)............................................ 8

*Caraballo v. City of N.Y.,*
526 F. App'x 129 (2d Cir. 2013). ................................................................................. 8

*Cifarelli v. Village of Babylon,*
93 F.3d 47, 5l (2d Cir. 1996). ...................................................................................... 6

*Colon v. City of New York,*
60 N.Y.2d 78, 468, N.Y.S.2d 453, 455 N.E.2d 1248 (1983)................................... 15

*Davis v. City of N.Y.,*
2007 WL 755190 (E.D.N.Y. Feb. 15, 2007). .............................................................. 8

*Fincher v. Depository Trust & Clearing Corp.,*
604 F.3d 712 (2d Cir. 2010). ....................................................................................... 6

*Garnett v. Undercover Officer C0039*,
838 F.3d 265 (2d Cir. 2016) . ................................................................ 12, 14

*Gerstein v. Pugh*,
420 U.S. 103 (1975). ................................................................................. 7

*Gierlinger v. Town of Brant*,
2015 WL 269131 (W.D.N.Y. Jan. 21, 2015) ......................................... 13

*Gomez v. The City of New York*,
185 F. Supp. 3d 299 (E.D.N.Y. 2016). .................................................. 14

*Graham v. Connor*,
490 U.S. 386 (1989). ............................................................................... 21

*Kinsella v. Rumsfeld*,
320 F.3d 309 (2d Cir. 2003). .................................................................. 6

*Kinzer v. Jackson*,
316 F.3d 139 (2d Cir. 2003)âââ&Å4RÅ%Åâ. ....................................... 15

*L.A. County v. Rettele*,
550 U.S. 609 (2007). .......................................................................... 16, 21

*Lane Capital Mgmt., Inc. v. Lane Capital Mgmt., Inc.*,
192 F.3d 337 (2d Cir. 1999). .................................................................. 6

*Lowth v. Town of Cheektowaga*,
82 F.3d 563 (2d Cir. 1996). .................................................................... 15

*MacPherson v. Town of Southampton*,
2013 WL 6058202 (E.D.N.Y. 2013). ..................................................... 13

*Matsushita Elec. Indus. Co. v. Zenith Radio Com.*,
475 U.S. 574 (1986). ............................................................................... 6

*Michigan v. Summers*,
452 U.S. 692 (1981). ................................................................. 16, 17, 19, 21

*Morse v. Spitzer*,
2013 WL 359326 (E.D.N.Y. Jan. 29, 2013). ......................................... 13

iii

*Muehler v. Mena,*
544 U.S. 93 (2005). ................................................................................................ 17, 21

*O'Neill v. Town of Babylon,*
986 F.2d 646 (2d Cir. 1993). ................................................................................ 7

*People v. Burbank,*
137 Mich. App. 266 (1984). ................................................................................ 18

*Posr v. Court Officer Shield #207,*
180 F.3d 409 (2d Cir.1999). ................................................................................ 7

*Rentas v. Ruffin,*
816 F.3d 214 (2d Cir. 2016). ................................................................................ 15

*Ricciuti v. N.Y.C. Transit Authority,*
124 F.3d 123 (2d Cir. 1997) . ................................................................................ 7, 13

*Russell v. Smith,*
68 F.3d 33 (2d Cir. 1995). ................................................................................ 15

*Singer v. Fulton County Sheriff,*
63 F.3d 110 (2d Cir. 1995). ................................................................................ 15

*State v. Broadnax,*
654 P.2d 96 (Wash. 1982). ................................................................................ 18

*State v. Carrasco,*
711 P.2d 1231 (Ariz. Ct. App. 1985) . ................................................................................ 18

*State v. Graves,*
119 N.M. 89 (N.M. Ct. App. 1994). ................................................................................ 19

*State v. Williams,*
665 So. 2d 112 (La. Ct. App. 1995). ................................................................................ 18

*States v. Taylor,*
716 F.2d 701 (9th Cir. 1983). ................................................................................ 19

*Struthers v. City of N.Y.,*
2013 WL 2390721 (E.D.N.Y. May 31, 2013) . ................................................................................ 12

iv

*Swartz v. Insogna,*
704 F.3d 105 (2d Cir. 2013). ................................................................ 13

*Tindle v. Enochs,*
2010 U.S. Dist. LEXIS 136561 (E.D. Mich. Mar. 19, 2010). .................................... 17

*Torres v. Hanslmaier,*
1995 U.S. Dist. LEXIS 6193 (S.D.N.Y. May 8, 1995). .......................................... 8

*United States v. Edwards,*
103 F.3d 90 (10th Cir. 1996). ............................................................... 20

*United States v. Fullwood,*
86 F.3d 27 (2d Cir. 1996). .................................................................. 20

*United States v. Heath,*
455 F.3d 52 (2d Cir.2006). ...................................................... ............. 8

*United States v. McEaddy,*
780 F. Supp. 464 (E.D. Mich. 1991). ......................................................... 18

*United States v. Pace,*
898 F.2d 1218 (7th Cir. 1990)................................................................ 19

*United States v. Reid,*
997 F.2d 1576 (D.C. Cir. 1993). .................................................... .............. 17

*United States v. Ridge,*
329 F.3d 535 (6th Cir. 2003). ............................................................... 17

*United States v. Sherrill,*
27 F.3d 344 (8th Cir. 1994) ................................................................. 20

*Ying Jing Gan v. City of N.Y.,*
996 F.2d 522 (2d Cir. 1993). ................................................................ 6

## PRELIMINARY STATEMENT

Plaintiffs Ravin Cox, Matthew Nelson, Billy Hippolyte, and Gary Jeanty (the "Moving Plaintiffs") respectfully submit this Memorandum of Law in support of their motion for summary judgment pursuant to Fed. R. Civ. P. 56, and hereby incorporate the accompanying Local Rule 56.1 Statement of Facts, as well as the declaration of counsel and the exhibits submitted therewith, and the pleadings and materials previously filed in this action.

Plaintiff Cox is moving for summary judgment as to his claims of false arrest, denial of a fair trial, and malicious prosecution, against the individual defendants Ortiz, Russo, Carretta, and Marcus. He is not asserting a claim against defendant Skelton. Plaintiffs Nelson, Hippolyte, and Jeanty, are moving for summary judgment on their claim for false arrest against the individual defendants Ortiz, Russo, Carretta, and Marcus. They are not asserting a claim against defendant Skelton. The Moving Plaintiffs have not asserted any state law claims, have withdrawn their *Monell* claim, and have no other claims outstanding in this litigation.

For the reasons set forth herein, the Moving Plaintiffs are entitled to summary judgment on their claims against these individual defendants as a matter of law, and should be permitted to proceed to a trial on damages.

## STATEMENT OF FACTS

On May 15, 2014, members of the NYPD's Brooklyn South Gang Squad ("BSGS") executed a search warrant at a three-family home located at 641 East 59 Street in Brooklyn, New York (the "Premises"). Defendants Russo, Carretta, and Marcus, were, as of that date, the Captain, Lieutenant, and Sergeant, that were overseeing the BSGS officers on duty that day, including defendant Ortiz. The warrant authorized the entry into the First Floor and Basement Apartments of the Premises. The BSGS officers utilized the NYPD's Emergency Services Unit ("ESU") to make the initial entry into the units. ESU's role was to enter and secure the apartments by seizing the occupants inside. It was only after the Premises were secured and the occupants seized that the BSGS members would enter the apartment and conduct the court-authorized search. All decisions as to whether to arrest any of the occupants inside the Premises were left to the BSGS officers. (See the Moving Plaintiffs' Statement of Facts pursuant to Local Rule 56.1 ["Pltfs' LR 56.1"] at ¶¶ 15-21).

### The Arrest and Prosecution of Ravin Cox

Ravin Cox was sitting in the front room of the First Floor Apartment when ESU entered. The apartment contained 13 people, not including the NYPD members, and was crowded. He was immediately seized and handcuffed in that front room. The officers began moving some of the handcuffed occupants around as they moved through the unit. Cox was dragged from the front room to a bedroom across the hall from a bathroom. (Plfts' LR 56.1 at ¶¶ 34, 39, 41-45, 50).

2

Some time later, the ESU officers were replaced by the BSGS officers, including the defendants other than Skelton. Defendants Russo and Ortiz encountered a handcuffed Cox in the bedroom where ESU had moved him. They searched the room and Ortiz claims to have found a loaded handgun on a shelf inside a closet in the bedroom.  The only reason Cox was in the bedroom in the first place was because an ESU officer moved him there after seizing him in the front room. The ESU officers executed a report that identified which persons were found in each room. That form indicated that none of the individuals in the First Floor Apartment were found in the bedroom where Ortiz found the handgun. (Plfts' LR 56.1 at ¶¶ 41-45, 51-52, 54-59; See also Plaintiffs' Exhibit 9).

According to the arrest report created by the defendants, Cox was arrested for the possession of the handgun, as well as possession of marijuana, and at least one gambling related offense. This paperwork was promptly provided to the KCDA by Ortiz, who met personally with prosecutors to discuss the details of the warrant execution and the arrests in order to assist the KCDA in their determination as to who to charge and what crimes to charge. Ortiz told the KCDA that Cox was found in the bedroom where the handgun was found. He has further admitted that he charged Cox with the gun (and nobody else) because of Cox's presence in that bedroom. (Plfts' LR 56.1 at ¶¶ 56-59; Plaintiffs' Exhibits 14-16).

Notably, no marijuana was actually recovered anywhere in the apartment (although some was recovered in the Basement Apartment). Moreover, as Captain Russo, who was the highest ranking supervisory officer on the scene, has admitted that (a) the defendants did not know who, if anyone, had been gambling in the unit, and (b) any such gambling in the

apartment would not have been illegal. It is therefore not surprising that Cox was only charged with possession of the handgun. (Plfts' LR 56.1 at ¶¶ 63-67).

Bail was set at arraignment in the amount of $5,000. Unable to post bail, Cox was jailed immediately thereafter. He was released on May 21, 2014, which was the date of the next court appearance. It was at that same appearance that all three weapons charges against Cox were dismissed. (Plfts' LR 56.1 at ¶¶ 70-73).

<u>The Outside Arrests</u>

Plaintiffs Nelson, Hippolyte, and Jeanty were in the vicinity of the Premises on the night of the arrest, although they never went inside the building, much less either of the apartments identified in the search warrant. When the NYPD arrived, they encountered these three plaintiffs  (the "Outside Plaintiffs") outside of the premises and immediately seized and handcuffed these three men. Nelson was behind the Premises at the far back wall, while Hippolyte and Jeanty were in the process of leaving the rear area. (Plfts' LR 56.1 at ¶¶ 74-78).

The Outside Plaintiffs were seized, handcuffed, and searched. None of the Outside Plaintiffs were found in possession of any contraband or engaged in any criminal conduct. They were held outside the premises for a period of time that the plaintiffs have estimated as between one to four hours. While defendant Russo speculated that it was 30 minutes or less, it is beyond dispute that Outside Plaintiffs were kept handcuffed after ESU began the entry, and after ESU finished securing the premises, and after ESU left the scene. It was then, at

some later point in time, that Russo directed his officers to release the Outside Plaintiffs from custody. The defendants made no record of this seizure, although Russo acknowledges that records, such as Stop and Frisk Reports, should have been created. (Plfts' LR 56.1 at ¶¶ 80-84 ).

<u>The Basement Arrests</u>

Numerous individuals were also seized by ESU officers in the Basement Apartment, including multiple plaintiffs in both of these consolidated actions. All of these plaintiffs were then formally arrested by the BSGS officers and defendants, and later arraigned and charged. Some were jailed after arraignment, others were not. None of these plaintiffs, at least those represented by counsel for the Thomas plaintiffs, are moving for summary judgment. The defendants have given every indication that they will move for summary judgment with respect to these (and all the other) arrests. The Basement Plaintiffs will reserve their statements and arguments for their opposition to any such motion by defendants.

## STANDARD OF REVIEW

A court must grant a motion for summary judgment where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is appropriate when the evidence, viewed in the light most favorable to the non-movant, presents no genuine issue of material fact. *Id.*; see also *Cifarelli v. Village of Babylon*, 93 F.3d 47, 51 (2d Cir. 1996). An issue of fact "is material if it might affect the outcome of the suit under governing law." *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010); *see also Kinsella v. Rumsfeld*, 320 F.3d 309, 311 (2d Cir. 2003). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Com.*, 475 U.S. 574, 587 (1986); *see also Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011).

To survive summary judgment, the non-moving party must produce evidence to support his case and "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible." *Ying Jing Gan v. City of New York*, 996 F.2d 522, 532 (2d Cir. 1993). Further, evidence that is "merely colorable or not significantly probative" is insufficient to defeat a motion for summary judgment. *Lane Capital Mgmt., Inc. v. Lane Capital Mgmt., Inc.*, 192 F.3d 337, 346 (2d Cir. 1999).

## ARGUMENT

## POINT I

## PLAINTIFF COX HAS ESTABLISHED THAT HE WAS ARRESTED WITHOUT PROBABLE CAUSE AND IS THEREFORE ENTITLED TO SUMMARY JUDGMENT ON HIS CLAIM FOR FALSE ARREST

The defendants' arrest of Ravin Cox for gun possession, marijuana possession, and promoting gambling, was wholly without probable cause and thus Cox is entitled to summary judgment against the four individual defendants, each of whom participated in, and agreed to Cox's arrest. To lawfully place a person under arrest, the arresting officer must possess facts sufficient to warrant a prudent person to believe that the suspect had committed or was committing an offense. *Posr v. Court Officer Shield #207*, 180 F.3d 409, 417 (2d Cir.1999); *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 128 (2d Cir. 1997) (citing *Gerstein v. Pugh*, 420 U.S. 103, 111 (1975)); *O'Neill v. Town of Babylon* 986 F.2d 646, 650 (2d Cir. 1993).

Here, there was no marijuana and Russo has openly acknowledged both that defendants' lacked personal knowledge as to whether Cox, or anyone else in the First Floor Apartment, was involved in gambling, and, in any event, that such conduct was not unlawful. Hence, the salient question is whether defendants could arrest Cox for the handgun found in the bedroom under the circumstances. The answer to that is plainly no, as was made clear several days later when the KCDA chose to dismiss all of the charges rather than present the case to a grand jury.

As set forth below, the defendants were well aware that ESU had entered a crowded apartment, seized, and likely moved the occupants around prior to the defendants' entry.

7

That Cox was present in the bedroom solely by post-seizure happenstance was something the defendants knew or should have known, and they had no basis to believe that he had the slightest idea that the handgun was in the room where he was placed, much less that possessed the handgun, had custody, control, or dominion over the handgun.

## A.   Defendants Lacked Probable Cause to Arrest Ravin Cox For the Handgun in the Closet

It is well settled that under New York law, a person "constructively possesses tangible property when he exercises 'dominion and control' over the property with a sufficient level of control over the area in which the contraband is found." *Davis v. City of N.Y.*, 2007 WL 755190, at *5 (E.D.N.Y. Feb. 15, 2007) (quoting *Torres v. Hanslmaier*, 1995 U.S. Dist. LEXIS 6193, at *6-7, (S.D.N.Y. May 8, 1995); citing *Cammick v. City of New York*, 1998 U.S. Dist. LEXIS 18006, at *7 (S.D.N.Y. Nov. 17, 1998)). In this circuit, mere co-residency in a residence where contraband is found is insufficient to establish probable cause. Rather, "those who are permitted to observe obvious criminal activity in a home are, absent indications to the contrary, likely to be complicit in the offense." *Caraballo v. City of N.Y.*, 526 F. App'x 129, 131 (2d Cir. 2013) (emphasis in original) quoting *United States v. Heath*, 455 F.3d 52, 57 (2d Cir.2006)).

In this case, Cox was not a resident of the First Floor Apartment and thus his mere presence in the apartment did not provide a basis for his arrest for the handgun. Rather, defendants relied entirely upon Cox's proximity to the closet in which the gun was found to charge Cox (and nobody else) for the gun.

8

However, it is clear that the defendants, at that moment that they entered the apartment and found a handcuffed Ravin Cox in the bedroom, knew that (i) ESU had encountered 13 people in a crowded apartment; (ii) ESU sometimes moved people they were seizing away from the place in the premises where they had been seized; and (iii) ESU had in fact moved at least some people within the premises. It was thus incumbent upon the defendants to confer with ESU with respect to Cox's original location in the apartment before arresting him for the handgun in the bedroom closet to confirm that Cox had been found in that room, and not simply placed there after being seized elsewhere.

Had the defendants done so, they would have been told that ESU had not found anyone in that bedroom. This is confirmed by ESU's own paperwork, that shows that people in the First Floor Apartment were all seized in one of two rooms, neither of which was the bedroom where Cox was placed and later found by Ortiz and Russo.

The defendants knew that determining this issue was an essential step in the arrest decision. Indeed, this was true not just for Cox but for all of the individuals seized throughout the premises who were not found in actual possession of a contraband. Put simply, the defendants knew full that the individuals they encountered throughout the apartment who were already in handcuffs, may have been moved to that location by ESU, which would negate any inferences that might otherwise be drawn if the person had been in that location voluntarily. It would be an easy matter to inquire of the ESU officers, either directly or by reviewing their paperwork, who had been found where.

They either chose not to ask the ESU officers, which cannot be justified under these

circumstances, or worse, did ask the ESU officers and then proceeded with Cox's arrest anyway. In either event, the defendants lacked a basis to arrest Cox for the possession of the handgun. To the extent that they may have deliberately ignored statements by ESU, such conduct would be material only to the degree to which punitive damages may be awarded, not to liability. Thus, Cox's presence in the bedroom when the defendants replaced ESU in the apartment did not provide probable cause for his arrest.

**B.      Defendants Lacked Probable Cause to Arrest**
**Ravin Cox For Possession of Marijuana                    I**

While the arrest report defendants' drafted states generally that Cox was also arrested for marijuana possession, there is no indication anywhere in the police records or anywhere else that Cox, or anybody else arrested in the First Floor Apartment, possessed marijuana, or that any marijuana was found anywhere inside the First Floor Apartment. Rather, it was gambling paraphernalia and the one handgun that was found in the First Floor Apartment, while two handguns and marijuana (but no gambling paraphernalia) were found in the Basement.

That this is so is borne out by the KCDA's detailed screening sheet, which was assembled based on Ortiz's in-person interview during which he utilized his then-fresh memory and various notes and records. The screening sheet (Plaintiffs' Exh. 16) establishes that the defendants were not claiming to have found Marijuana in the apartment. It is further confirmed by the criminal complaint then drafted by the KCDA (Plaintiffs' Exh. 14), which omits any reference or charge relating to the marijuana.

10

**C.      Defendants Lacked Probable Cause to Arrest**
**          Ravin Cox For any Gambling Offenses                    I**

As Russo has expressly acknowledged, the defendants had no idea whether anybody inside the premises was actually involved in any gambling at the location, or whether any gambling was occurring in the first place. Moreover, Russo further admits that gambling in a residence is not illegal. (Plfts' LR 56.1 at ¶¶ 62-67). All of which is to say the defendants lacked probable cause to arrest Cox for any gambling-related offense. That this is so is confirmed again by the KCDA's decision not to charge Cox with any gambling offenses.

**POINT II**

**PLAINTIFF COX IS ENTITLED TO SUMMARY**
**JUDGMENT AGAINST DEFENDANTS FOR**
**MALICIOUS PROSECUTION AND THE DENIAL OF**
**THE RIGHT TO A FAIR TRIAL**

It is beyond dispute that the defendants communicated to the KCDA that Cox was arrested for the handgun based on his proximity to the closet where the gun was located. The defendants did not inform the KCDA that they were well aware that Cox was placed in the room only after he had been seized (or that they had deliberately failed to ascertain whether this was so) by ESU officers. In so doing, the defendants provided prosecutors with a falsified and misleading version of the surrounding facts, which was essential to the KCDA's decision to charge Cox with possessing the handgun. This charge resulted in the setting of bail and Cox's resultant incarceration. Plaintiff is therefore entitled to summary judgment on both of his post-arraignment causes of action.

11

## A.    Defendants Denied Cox The Right to a Fair Trial

The Second Circuit has recently discussed the contours of a fair trial claim, and

outlined the three prongs of the cause of action as follows:

> In order to succeed on a claim for a denial of the right to a fair
> trial against a police officer based  on an allegation that the
> officer falsified information, an arrestee must prove by a
> preponderance of the evidence that the officer created false
> information, the officer forwarded the false information to
> prosecutors, and the false information was likely to influence a
> jury's decision. These requirements all provide necessary limits
> on the reach of a denial of a fair trial claim based on false
> information.

*Garnett v. Undercover Officer C0039*, 838 F.3d 265, 279–80 (2d Cir. 2016) (citations omitted).

There is no further materiality threshold, and, as the Court in *Garnett* stated, "**any**

information fabricated by an officer can serve as the basis of a claim for a denial of the right

to a fair trial." *Id.*, at 279 (emphasis in original). Accordingly, plaintiff's denial-of-fair-trial

claim may proceed based solely on the false narrative of events that defendant Gatling

created and communicated to prosecutorial authorities. *See Id.* at 280 ("Ricciuti's holding

applies to falsified information contained in an officer's account of his or her observations of

alleged criminal activity which he or she conveys to prosecutors."); *see also Struthers v. City of

New York*, 2013 WL 2390721, at *13 (E.D.N.Y. May 31, 2013) (statements made in a criminal

court complaint can form the basis of a fair trial claim). These three elements are present

here, as Gatling materially misstated the facts surrounding plaintiff's arrest to prosecutors,

who initiated plaintiff's prosecution based entirely on Gatling's allegations.

It should also be noted that, "the Second Circuit has 'consistently held that a

post-arraignment defendant who is obligated to appear in court in connection with criminal charges whenever his attendance is required suffers a Fourth Amendment deprivation of liberty.'" *Gierlinger v. Town of Brant*, 2015 WL 269131, at *5 (W.D.N.Y. Jan. 21, 2015) (quoting *Swartz v. Insogna*, 704 F.3d 105, 112 (2d Cir. 2013)); *see also MacPherson v. Town of Southampton*, 2013 WL 6058202, *5 (E.D.N.Y. 2013) ("[T]he requirement that a plaintiff appear in court, post-arraignment, in connection with criminal proceedings, does constitute a Fourth Amendment seizure."). Thus, courts uniformly find the deprivation of liberty element satisfied whenever the plaintiff was required during the course of his criminal prosecution to attend post-arraignment court appearances. *See, e.g.*, *Ricciuti v. New York City Transit Auth.*, 124 F.3d 123, 127, 130 (2d Cir. 1997) (allowing claim to proceed where plaintiffs were required to appear in criminal court seven times during a two-month period, though the charges were later dismissed when the police officer failed to appear); *Morse v. Spitzer*, 2013 WL 359326, at *3 (E.D.N.Y. Jan. 29, 2013) (holding that a plaintiff "suffered a deprivation of liberty" when he "was required to make multiple court appearances").

In this case, the defendants' account of Cox's arrest created the false impresion that Cox was in the bedroom where the gun was found voluntarily. This fact might arguably permit an inference that Cox either placed the gun in the closet or knew that it was there and chose to remain alone in the room. This scenario was designed to convey Cox's dominion and control over the gun. Yet, the defendants were aware that people throughout the premises had been moved from one location to another by ESU officers, and thus Cox may well have ended up alone in the bedroom precisely because that was where ESU moved him

13

after finding him in the crowded adjoining front room with numerous other people. This information was not conveyed to prosecutors. This omission is neither an incidental nor immaterial.

Even if the defendant was to identify some slim thread of an alternative basis for plaintiff's arrest, such probable cause would not save the defendants from summary judgment. It is well settled law that "probable cause is no defense to a denial of the right to a fair trial claim." *Garnett*, 838 F.3d at 278. Thus, "[w]hen an officer supplies false information to a prosecutor about a suspect, the officer has violated that suspect's right to a fair trial, even if the officer had probable cause to arrest the accused." *Gomez v. The City of New York*, 185 F. Supp. 3d 299, 302 (E.D.N.Y. 2016) (quoting *Abreu v. City of New York*, 2006 WL 401651, at *6 (E.D.N.Y. Feb. 22, 2006)).

It is beyond dispute that defendants denied Cox the right to a fair trial by making these false allegations to prosecutors, and compounded matters by signing off on the criminal complaint grounded solely in this materially false and misleading statement of fact. Plaintiff was jailed for a number of days as a result. These undisputed facts establish that plaintiff is entitled to summary judgment on his denial of a fair trial claim.

**B.      Defendants Caused Cox to be Maliciously Prosecuted**                          I

A claim for malicious prosecution under 42 U.S.C. § 1983, requires proof of four elements: (1) that the defendant commenced or continued a criminal proceeding against him; (2) that the proceeding was terminated in the plaintiff's favor; (3) that there was no probable

cause for the proceeding; and (4) that the proceeding was instituted with malice. *Kinzer v. Jackson*, 316 F.3d 139, 143 (2d Cir. 2003) (citing *Singer v. Fulton County Sheriff*, 63 F.3d 110, 116-17 (2d Cir. 1995); *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 571 (2d Cir. 1996) (citing *Colon v. City of New York*, 60 N.Y.2d 78, 82, 468, N.Y.S.2d 453, 455 N.E.2d 1248 (1983)); *Russell v. Smith*, 68 F.3d 33, 36 (2d Cir. 1995)).  The plaintiff easily satisfies all four criteria.

Defendants cannot dispute that they brought about the initiation of Cox's criminal prosecution or that it was terminated in Cox's favor. As for the absence of probable cause, that is readily determined from the same facts as those that compel summary judgment on plaintiff's false arrest claim. Finally, with respect to determining malice, the defendants' deliberate conduct and the absence of probable more than suffices to establish malice. It is well settled that "actual malice can be inferred when a plaintiff is prosecuted without probable cause." *Rentas v. Ruffin*, 816 F.3d 214, 221–22 (2d Cir. 2016) (citing *Manganiello v. City of N.Y.*, 612 F.3d 149, 163 (2d Cir.2010)). This holding echoed the Second Circuit's plainly stated ruling thirteen years when it held that "[a] lack of probable cause generally creates an inference of malice." *Boyd v. City of N.Y.*, 336 F.3d 72, 78 (2d Cir. 2003). Here, the defendants deliberately mislead prosecutors with respect to Cox's proximity to the handgun. Thus, both this conduct, and the absence of probable cause, demonstrate malice on the part of defendants.

15

**POINT III**

**PLAINTIFFS NELSON, HIPPOLYTE AND JEANTY
WERE UNLAWFULLY SEIZED AND HELD IN
VIOLATION OF THEIR RIGHTS UNDER THE
FOURTH AMENDMENT AS A MATTER OF LAW**

The defendants had a valid search warrant that permitted them to enter two of the

three apartments inside of 641 East 59 Street. It is undisputed that the Outside Plaintiffs

were, by all accounts, found outside of the building altogether. Thus, absent some

independent evidence of criminal conduct (which defendants have never alleged), there was

no lawful basis to seize or detain them. Moreover, even if a momentary detention could be

justified by the defendants' desire to ensure that there was no interference with ESU's initial

entry into the building, the defendants had no right to hold the Outside Plaintiffs for more

than the few minutes the entry would require, and certainly had no lawful authority to

handcuff and detain them for the duration of the entry and subsequent search.

In executing a search warrant, officers may take reasonable measures "to secure the

premises and to ensure their own safety and the efficacy of the search," *L.A. County v. Rettele*,

550 U.S. 609, 614 (2007), which measures may include "detain[ing] occupants of the

premises while a proper search is conducted." *Michigan v. Summers*, 452 U.S. 692, 705 (1981);

see also *Id.* at 702–03 ("The risk of harm to both the police and the occupants is minimized

if the officers routinely exercise unquestioned command of the situation."). The Supreme

Court's holding in *Summers* thus permits officers executing a search warrant to automatically

"detain the occupants of the premises while a proper search is conducted." *Id.* at 705. The

detention in this context is justified as incident to the execution of a search warrant, much

16

like a search is when incident to a valid arrest, and as such does not require as a

pre-condition that the officers have any sort of individualized suspicion. *Muehler v. Mena*, 544

U.S. 93, 98 (2005) ("An officer's authority to detain incident to a search is categorical; it does

not depend on the 'quantum of proof justifying detention.").  Nonetheless, *Summers*'

exception does not extend "beyond the immediate vicinity of the premises being searched."

*Bailey v. United States*, 133 S. Ct. 1031, 1042-43 (2013).

Importantly, *Summers* involved the detention of an actual resident of the premises

subject to the search warrant. *Summers*, 452 U.S. at 705 ("[I[t is constitutionally reasonable to

require [a] citizen to remain while officers of the law execute a valid warrant to search his

home."). The weight of authority logically treats *Summers*' exception as inapplicable to

non-resident, non-occupants of the premises. Where, as here, the detained individuals are

non-residents who were not inside the subject premises, their detention cannot be justified as

incident to execution of the search warrant, and instead requires "a showing by the [officers]

of particular facts and circumstances that 'substantiate the legitimate law enforcement

interests that support the warrantless seizure.'" *Tindle v. Enochs*, 2010 U.S. Dist. LEXIS

136561, at *13–14 (E.D. Mich. Mar. 19, 2010) (citing, *inter alia*, *United States v. Ridge*, 329 F.3d

535 (6th Cir. 2003)).

Some jurisdictions limit Summers strictly to actual residents of the premises covered

by the warrant. *See, e.g.*, *United States v. Reid*, 997 F.2d 1576, 1579 (D.C. Cir. 1993) ("Unlike

Summers, Reid was not a resident of the apartment which was to be searched under the

warrant, and the trial did not disclose that he had any proprietary or residential interest in the

17

suspected premises."), cert. denied, 510 U.S. 1132 (1994); *State v. Carrasco*, 711 P.2d 1231,

1234 (Ariz. Ct. App. 1985) (reasoning that *Summers* does not apply to visitors); *State v.*

*Williams*, 665 So. 2d 112, 115 (La. Ct. App. 1995) (finding *Summers* inapplicable because

defendant "was not a resident of the house to be searched, nor was she even a known

suspect"); *People v. Burbank*, 137 Mich. App. 266, 269 (1984) (per curiam) (distinguishing

*Summers* on the ground that defendant "did not live in the house that the police were

searching"), cert. denied, 469 U.S. 1190 (1985). Here, plaintiffs were not merely non-

residents, they were not inside the premises in the first place and no detention of the Outside

Plaintiffs, for any period of time, could be justified.

But even with a more liberal reading of *Summers*, the defendants' decision to handcuff

and arrest the Outside Plaintiffs is indefensible. Courts taking a broader view might allow a

visitor's detention if the officers can articulate reasonably specific facts that associate a visitor

found inside the premises with the residence or the criminal activity underlying the search

warrant. *See, e.g.*, *Baker v. Monroe Township*, 50 F.3d 1186, 1192 (3d Cir. 1995) ("Although

*Summers* itself only pertains to a resident of the house under warrant, it follows that the police

may stop people coming to or going from the house if police need to ascertain whether they

live there."); *United States v. McEaddy*, 780 F. Supp. 464, 471 (E.D. Mich. 1991) (holding that

"'occupant' refers to any individual on the premises who, from the perspective of the

executing officers at the scene, might reasonably have some relationship to the subject

premises"); *State v. Broadnax*, 654 P.2d 96, 103 (Wash. 1982) (en banc) (requiring, to detain a

visitor, facts additional to the visitor's "mere presence" at the scene that associate him with

the illegal activities to be investigated); *State v. Graves*, 119 N.M. 89, 92 (N.M. Ct. App. 1994) ("The police cannot detain a nonresident unless they have a reasonable basis to believe that the non-resident has some type of connection to the premises or to criminal activity."). Such a reading might justify the temporary detention of non-residents, but still requires that they actually be inside the premises.

The broadest view of *Summers* would define an "occupant" in even more expansive terms to include any person visiting the premises to be searched. *See, e.g.*, *United States v. Pace*, 898 F.2d 1218, 1239 (7th Cir. 1990) ("At the very least, *Summers*' analysis . . . applies to the detention of visitors."); *States v. Taylor*, 716 F.2d 701, 707 (9th Cir. 1983) ("The Court clearly framed *Summers* in terms of 'occupants,' not owners.").

In this case, however, determining the appropriate breadth of the term "occupant" is a red herring. That is because the Outside Plaintiffs were never occupants of the premises in the first place. One case within the Second Circuit confirms the narrowness of Summers' exception. In *Cabral v. City of New York*, the court articulated a multi-factor test for determining whether an occupant may be detained under Summers within the "immediate vicinity" of the premises to be searched. *Cabral v. City of New York*, 2014 U.S. Dist. LEXIS 131342, at *10 (S.D.N.Y. Sept. 17, 2014). According to Cabral, the reasonableness of the occupant's detention is informed by "the lawful limits of the premises, whether the occupant was within the line of sight of his dwelling, the ease of reentry from the occupant's location, and other relevant factors." *Id*. The court not only found the detention to be unreasonable but also denied the officers' qualified immunity defense, reasoning as follows:

19

> In light of the clearly established requirement that detentions
> made pursuant to Summers be limited to the occupants of the
> premises to be searched, no reasonable officer could have
> believed that the detention of Plaintiff as he sat in a parked
> vehicle on another block was justified by Summers.
> Consequently, Defendant is not entitled to qualified immunity
> under the Summers theory.

*Id.* at *15–16. Even though the officers witnessed that "the person associated with the

apartment being searched, had just entered the minivan in which Plaintiff was sitting," and

the vehicle was right "around the block from the apartment" subject to the search warrant,

the court held that "any nexus between Plaintiff and the [occupant of the subject premises]

was insufficient" to justify plaintiff's detention. *Id.* at *9–10; *see also United States v. Edwards*,

103 F.3d 90 (10th Cir. 1996) (declining to extend *Summers* to cases where the occupant has

exited the premises subject to the search warrant and declaring unconstitutional the

occupant's detention as he was leaving his residence and heading to his car); *United States v.

Sherrill*, 27 F.3d 344, 346 (8th Cir. 1994) (holding that "because [defendant] had left the area

of the search" his stop and detention by the officers outside his residence was

unconstitutional and outside the scope of Summers' exception). And although some courts

have upheld as reasonable the detention of persons found near, or in the course of exiting,

the premises to be searched, in each such case the person detained was a recent occupant of

the subject premises. *Cabral*, at*14; see also *United States v. Fullwood*, 86 F.3d 27 (2d Cir. 1996)

(upholding the detention of the premises' occupant found outside the premises to be

searched and about to enter his vehicle).

Finally, even if the seizure of the Outside Plaintiffs was initially lawful under the

20

circumstances, their continued detention beyond the few minutes needed to effectuate the purpose of their seizure (i.e., ESU's entry into the premises and the securing of the two apartments) cannot be justified. That is to say, detentions that fall within the scope of *Summers*' exception must still be reasonable under the Fourth Amendment, which is a strictly "objective" inquiry. Unreasonable actions in this context might include, for example, "the use of . . . restraints that cause unnecessary pain or are imposed for a prolonged and unnecessary period of time." *Rettele*, 550 U.S. at 614; *see also Muehler*, 544 U.S. at 103 ("The use of handcuffs is the use of force and such force must be objectively reasonable under the circumstances." (citing *Graham v. Connor*, 490 U.S. 386 (1989))). Both the length of the detention and the efforts of law enforcement officers to safely and quickly secure the premises are relevant in determining whether a detention is reasonable in the context of executing a search warrant of a premises. *Summers*, 452 U.S. at 705. The detention must be no longer than is necessary to effectuate the purpose thereof—which is to safely secure the premises and minimize the risk of harm to the officers executing the search warrant.

It is plain that the defendants seized the Outside Plaintiffs because doing so was more convenient for the defendants, not because there was a necessary or lawful basis to do so. It is equally obvious that they then simply left them in handcuffs until Russo eventually issued the order to release them. Whether this was meant to be punitive or was simply an unthinking error, there is no dispute that the defendants' conduct was deliberate, that it caused the Outside Plaintiffs to be arrested and that this seizure was unconstitutional. The Outside Plaintiffs are entitled to summary judgment against the individual defendants.

## CONCLUSION

For the foregoing reasons, the Moving Plaintiffs' motion should be granted in

all respects.

Dated:   New York, New York
July 3, 2017

LUMER LAW GROUP
Attorneys for Moving Plaintiffs
225 Broadway, Suite 2700
New York, New York 10007
(212) 566-5060

Michael Lumer

22