UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

TEVON THOMAS, et al,

Plaintiff,

- against -

THE CITY OF NEW YORK, et al.,

Defendants.

HAROLD BROWNE et al,

Plaintiff,

-against-

THE CITY OF NEW YORK, et al.,

Defendants.

## DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

*ZACHARY W. CARTER*
*Corporation Counsel of the City of New York*
*Attorney for Defendants*
*100 Church Street*
*New York, N.Y.  10007*

*Of Counsel:  Elissa B. Jacobs/Joseph Zangrilli*
*Tel:  (212) 356-3540*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ......................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................... 1

STATEMENT OF FACTS ............................................................................................................ 3

STANDARD OF LAW ................................................................................................................. 5

ARGUMENT

      POINT I

                PLAINTIFF COX IS NOT ENTITLED TO
                SUMMARY JUDGMENT WITH RESPECT TO
                HIS FALSE ARREST OR MALICIOUS
                PROSECUTION CLAIMS BECAUSE HIS
                ARREST WAS SUPPORTED BY PROBABLE
                CAUSE. ...................................................................................... 6

      POINT II

                PLAINTIFF COX IS NOT ENTITLED TO
                SUMMARY JUDGMENT WITH RESPECT TO
                HIS DENIAL OF A RIGHT TO FAIR TRIAL
                CLAIM AS THERE IS NO EVIDENCE THAT
                ANY OF THESE DEFENDANTS
                COMMUNICATED INFORMATION KNOWN
                BY THEM TO BE FALSE TO THE
                PROSECUTOR. ........................................................................ 11

      POINT III

                OFFICERS WERE PERMITTED TO DETAIN
                PLAINTIFFS OUTSIDE FOR THE DURATION
                OF THE SEARCH. ................................................................... 13

CONCLUSION ............................................................................................................................. 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Anderson v. Liberty Lobby, Inc.,
   477 U.S. 242 (1986)......................................................................................................5

Anthony v. City of New York,
   339 F.3d 129 (2d Cir. 2003)........................................................................................10

Askins v. City of NY,
   2012 US Dist LEXIS 19940 (S.D.N.Y Feb. 13, 2012)................................................12

Baker v. McCollan,
   443 U.S. 137 (1979)......................................................................................................7

Caldarola v. Calabrese,
   298 F.3d 156 (2d Cir. 2002)..........................................................................................7

Chalmers v. Mitchell,
   73 F.3d 1262 (2d Cir. 1996)........................................................................................10

Covington v. City of New York,
   171 F.3d 117 (2d Cir. 1999)..........................................................................................6

Devenpeck v. Alford,
   543 U.S. 146 (2004)......................................................................................................8

Eastman Kodak Co. v. Image Tech. Servs., Inc.,
   504 U.S. 451 (1992)......................................................................................................5

Hygh v. Jacobs,
   961 F.2d 359 (2d Cir. 1992)..........................................................................................6

Illinois v. Gates,
   462 U.S. 213 (1983)......................................................................................................7

Jaegly v. Couch,
   439 F.3d 149 (2d Cir. 2006)..........................................................................................6

Jocks v. Tavernier,
   316 F.3d 128 (2d Cir. 2003)........................................................................................11

Lauro v. Charles,
   219 F.3d 202 (2d Cir. 2000)........................................................................................10

Michigan v. Chesternut,
    486 U.S. 567 (1988)........................................................................................................13

Michigan v. Summers,
    452 U.S. 692 (1981)............................................................................................13, 14, 15

Muehler v. Mena,
    544 U.S. 93 (2005)....................................................................................................14, 15

Pierson v. Ray,
    386 U.S. 547 (1967)........................................................................................................7

Podell v. Citicorp Diners Club, Inc.,
    112 F.3d 98 (2d Cir. 1997)..............................................................................................5

Quinn v. City of New York,
    No. 99-CV-7068 (JBW), 2003 U.S. Dist. LEXIS 3521 (E.D.N.Y. 2003) ................................7

Ricciuti v. New York City Transit Auth.,
    124 F.3d 123 (2d Cir. 1997)........................................................................................7, 11

Singer v. Fulton County Sheriff,
    63 F.3d 110 (2d Cir. 1995)..............................................................................................6

United States v. Adegbite,
    877 F.2d 174 (2d Cir. 1989)..........................................................................................13

United States v. Barlin,
    686 F.2d 81 (2d Cir. 1982)............................................................................................14

*United States v. Fullwood*,
    86 F.3d 27 (2d Cir. 1996)..............................................................................................14

United States v. Traylor,
    396 Fed. Appx. 725 (2d Cir. 2010)................................................................................10

United States v. Vargas,
    369 F.3d 98 (2d Cir. 2004)............................................................................................13

Universal Calvary Church v. City of N.Y., 96 Civ. 4606 (RPP)
    2000 U.S. Dist. LEXIS 15153 (S.D.N.Y. Oct. 13, 2000) ........................................................2

Vasconcellos v. City of New York,
    12 CV 8445 (CM), 2015 U.S. Dist. LEXIS 121572 (S.D.N.Y. Sept. 9, 2015) ...................3, 6

Weyant v. Okst,
    101 F.3d 845 (2d Cir. 1996)............................................................................................7

<u>Whren v. United States,</u>
    517 U.S. 806 (1996) ..................................................................................................7

<u>Zellner v. Summerlin,</u>
    494 F.3d 344 (2d Cir. 2007) ....................................................................................6

**Statutes**

42 U.S.C. § 1983 ...................................................................................................1, 6

**Other Authorities**

Fourth Amendment ........................................................................................................13

Fed. R. Civ. P. 56 .........................................................................................................5

Local Civil Rule 56.1 ................................................................................................3, 4

Local Civil Rule 56.1(c) ...............................................................................................3

New York *Attorney for Defendants* 100 ......................................................................16

Rule 56(c) ......................................................................................................................5

Rule 68 ..........................................................................................................................1

**MEMORANDUM OF LAW IN OPPOSITION
TO PLAINTIFF'S PARTIAL MOTION FOR
SUMMARY JUDGMENT**

**PRELIMINARY STATEMENT**

The Thomas plaintiffs[1][2] filed their cause of action pursuant to 42 U.S.C. § 1983 in December of 2014. Their causes of action relate to the May 15, 2014 execution of a search warrant of the basement and first floor of 641 East 59th Street in Brooklyn, New York ("the location" or "the premises") by the New York City Police Department's (NYPD) Brooklyn South Gang Squad. As a result, twenty-five (25) individuals, including Ravin Cox, were arrested inside the premises while Matthew Nelson, Billy Hippolyte and Gary Jeanty were detained outside the premises. The Thomas plaintiffs' Second Amended Complaint, filed on May 18, 2016, alleges federal claims of false arrest, malicious prosecution, and denial of a fair trial against defendants William Russo, Peter Carretta, Gary Marcus, and Joebian Ortiz. On On

As set forth herein, the undisputed evidence establishes that, pursuant to the New York law of constructive possession the defendant Officers had probable cause, or at a minimum, arguable probable cause, to arrest all plaintiffs for the offense of marijuana possession in the

---

[1] For purposes of this motion, the "Thomas plaintiffs" include the following individuals: Ravin Cox, Tevon Thomas, Milton Sears, Herby Aime, Jobe Leemow, David Alcindor, Sheldon Nyack, Zandaa Dewar, Markous Fray, Matthew Nelson, Gary Jeanty, Billy Hippolyte, and Lloyd Henry. See Thomas Second Amended Complaint (hereinafter, "Thomas SAC"). Dwyte Pilgrim, Brandon Thomas, Ryan Clyne, Alonzo Sealy, Lloyd Henry and Ali Kettrles were all also plaintiffs in the Thomas SAC; however, each of these individuals has accepted a Rule 68 Offer of Judgment settling their claims. Alishea Walters, while a party to the Thomas action, is no longer represented by the Thomas plaintiffs' counsel and thus the allegations set forth in the Thomas SAC are not raised on her behalf (see Thomas SAC at ¶ 2); therefore, the instant motion does not apply with respect to plaintiff Walters's cause(s) of action.

[2] Four additional plaintiffs, the "Browne plaintiffs," include the following individuals: Harold Browne, Dwayne Jones, and Adolphus McLeod. They filed a separate cause of action. As none of the Browne plaintiffs moved for summary judgment in this action, their claims are not addressed in these papers.

third degree, as well as to arrest and/or prosecute plaintiffs Fray, Cox, Dewar, Nyack, and Jones for criminal possession of a weapon.  As probable cause or, at the very least, arguable probable cause existed for plaintiffs' arrests, plaintiffs cannot demonstrate a lack of probable cause for their prosecutions; additionally, no intervening fact came to light between the time of plaintiffs' arrests and prosecutions to dissipate the probable cause for their arrests.  When viewed in the light most favorable to plaintiffs, the record also fails to sustain any of plaintiffs' claims for malicious prosecution on the ground that plaintiffs cannot establish the requisite element of initiation.  Furthermore, because there is no evidence that the named officers fabricated evidence, the denial of fair trial claims must also be dismissed.  As plaintiffs fail to establish any underlying constitutional violations, their claims for failure to intervene and supervisory liability cannot withstand summary judgment.[3]

On June 30, 2017, defendants moved for summary judgment with respect to all of plaintiffs' purported claims.  On July 3, 2017, plaintiffs Cox, Nelson, Hippolyte and Jeanty moved for partial summary judgment with respect to their purported claims for false arrest, as well as Cox's claim for malicious prosecution and denial of a right to fair trial.  For the Court's convenience, as noted herein, in opposition to plaintiff's motion, defendants rely upon their 56.1 Statement of Undisputed Material Facts and the Declaration of Melanie Speight dated June 30, 2017, and attached exhibits.  Defendants respectfully submit that, based upon the undisputed material facts, Cox's arrest and prosecution was supported by probable cause or, at a minimum,

---

[3] Plaintiff Harold Browne has also brought an excessive force claim against an unidentified officer.  Browne Amended Complaint, ¶ 55.  These claims must be dismissed as plaintiff Browne has been unable to identify this officer.  Where plaintiff is unable to state that any of these other officers used force on him, the claim against these officers must be dismissed.  See, e.g. Universal Calvary Church v. City of N.Y., 96 Civ. 4606 (RPP) 2000 U.S. Dist. LEXIS 15153, at *87 (S.D.N.Y. Oct. 13, 2000) (Dismissing plaintiff's claims as to named defendants where he could not identify the officers who used force against him.)

arguable probable cause.  In addition, no false statements were transmitted to the prosecutors office.  Lastly, defendants had the right to detain Nelson, Hippolyte and Jeanty while the search warrant was executed.  Consequently, defendants' motion for summary judgment should be granted and plaintiff's motion for partial summary judgment should be denied.

## STATEMENT OF FACTS

The following facts are set forth in defendants' memorandum of law in support of their motion for summary judgment.  To the extent they are relevant to this motion, they are reiterated here for ease of reference.  In addition, for a full statement of the material undisputed facts relative to this submission, defendants respectfully  refer the court to their Statement Pursuant to Local Civil Rule 56.1, dated June 30, 2017 (hereinafter "Def. 56.1 Stmt.") and their Counter-Statement Pursuant to Local Civil Rule 56.1, dated May 6, 2015 (hereinafter "Def. 56.1 Ctr. Stmt.").

In or around early May 2014, the NYPD's Brooklyn South Gang Squad ("BSGS") received information from a confidential informant ("C.I.") that at 641 East 59th Street ("the location" or "the premises) members of the Crip gang would gather, and that there was often gambling and sales of marijuana there and that people frequented the location with firearms.  (Defs. 56.1 at ¶ 1).[4]  The BSGS already knew that, in the rear area of the block on which the premises was located, the Crip gang often congregated and held meetings there in the past.  (Id. at ¶ 4).  (The rear area refers to the space behind the backyards of the houses, where

---

[4] The material facts set forth in Defendant's Rule 56.1 statement are adopted only for purposes of this motion for Summary Judgment.  See Local Civil Rule 56.1(c) (facts are admitted only "for the purposes of the motion").  Defendant reserves the right to assert different and/or conflicting facts at trial.  See Vasconcellos v. City of New York, 12 CV 8445 (CM) (HBP), 2015 U.S. Dist. LEXIS 121572, at *4 (S.D.N.Y. Sept. 9, 2015).

there is a communal "alleyway" or drive way connecting all of the houses on the block. ( Id.)  On May 13, 2014, the Supreme Court of the State of New York, County of Kings, issued a Search Warrant for the first floor and basement units of the premises.  (Id. at ¶ 19).

When members of the BSGS executed the referenced search warrant on May 15, 2014, personnel from the Emergency Services Unit ("ESU") assisted by breaching the location. (Id. at ¶¶ 38, 56).  ESU made initial entry into the first floor apartment and then entered the basement through the back door.  (Id. at ¶ 64).  Once they gained entry, and prior to entry by the BSGS officers, the ESU officers secured the individuals inside and  informed Captain Russo that the premises were secure.  (Id. at ¶ 56).  The BSGS team did not enter the first floor of the premises until it was secured by ESU.  (Id. at ¶ 66).

Detective Ortiz as well as another member of the BSGS team conducted the search of the premises.  (Id. at ¶ 105).  Plaintiff Cox, was found by BSGS in a first floor bedroom where a firearm was located, was charged with possession of that firearm.  (Id. at ¶ 89). While the search warrant was being executed, plaintiffs Nelson, Jeanty, and Hippolyte were detained in the backyard, and ultimately released without charges (Id. at ¶¶ 156-158).  Detective Ortiz was designated as the arresting officer for all twenty-five (25) arrests.  (Id. at ¶ 21).  From BSGS, the senior officer on the scene for the search warrant execution was Captain Russo; the second-in-command was Lieutenant Peter Caretta, and Sergeant Marcus was also on the scene. (Id. at ¶ 42).  The arrestees were transported from 641 East 59th Street to the 67th Precinct.  (Id. at ¶ 151).  At the 67th Precinct stationhouse, some arrestees were issued Desk Appearance Tickets ("DATs") and released from the precinct, while others were transported to Central Booking.  (Id. at ¶ 153).

Plaintiff Cox was arraigned only on charges relating to firearm possession (id. at ¶ 340).  Ultimately, all charges against all plaintiffs were dismissed.

- 4 -

## STANDARD OF LAW

Under Rule 56(c), summary judgment is warranted when, in viewing the evidence in the light most favorable to the non-movant, the Court determines that there is no genuine issue of material fact and the movants are entitled to judgment as a matter of law.  Fed. R. Civ. P. 56; Eastman Kodak Co. v. Image Tech. Servs., Inc., 504 U.S. 451, 456 (1992).  Factual disputes will only defeat a motion for summary judgment when they are material or relevant to the issues before the court.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A party may not oppose summary judgment by merely offering conclusory allegations or denials.  Podell v. Citicorp Diners Club, Inc., 112 F.3d 98, 101 (2d Cir. 1997).  Rather, to withstand judgment, a plaintiff must produce evidence that would permit the finder of fact to properly proceed to a verdict in his or her favor.  Anderson, 477 U.S. at 248-50.

**ARGUMENT**

**POINT I**

**PLAINTIFF COX IS NOT ENTITLED TO SUMMARY JUDGMENT WITH RESPECT TO HIS FALSE ARREST AND MALICOUS PROSECUTION CLAIMS BECAUSE HIS ARREST WAS SUPPORTED BY PROBABLE CAUSE.**

Defendants are entitled to summary judgment with respect to plaintiff's false arrest claim because his arrest was supported by probable cause.[5]  The elements of a claim of false arrest under § 1983 "are substantially the same as the elements of a false arrest claim under New York law." Hygh v. Jacobs, 961 F.2d 359, 366 (2d Cir. 1992).  Under New York law, the elements of a false arrest claim are: (1) the defendant intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged.  Singer v. Fulton County Sheriff, 63 F.3d 110, 118 (2d Cir. 1995).  The existence of probable cause to arrest is a complete defense to a § 1983 false arrest claim.  Covington v. City of New York, 171 F.3d 117, 122 (2d Cir. 1999). Courts have repeatedly held that "a claim for false arrest turns only on whether probable cause existed to arrest a defendant, and that it is not relevant whether probable cause existed with respect to each individual charge, or, indeed, any charge actually invoked by the arresting officer at the time of arrest."  Jaegly v. Couch, 439 F.3d 149, 154 (2d Cir. 2006) (citing Devenpeck v. Alford, 543 U.S. 146, 153-54 (2004)); see also Zellner v. Summerlin, 494 F.3d 344, 369 (2d Cir. 2007) ("[A]n arrest is not unlawful so long as the officer has knowledge of, or reasonably trustworthy information as to, facts and circumstances sufficient to provide probable cause to believe that the

---

[5] Defendants' arguments in opposition to plaintiff's motion substantially mirror their arguments in support of their own motion for summary judgment.  Here, defendants' probable cause analysis is modified to address purported factual distinctions raised by plaintiff.

person arrested has committed any crime.") When there is no genuine dispute as to the relevant material facts, whether probable cause exists may be determined as a matter of law.  Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996).   Similarly, the existence of probable cause is a complete defense to a claim of malicious prosecution.  Savino v. City of New York, 331 F.3d 63, 72 (2d Cir. 2003).

Probable cause to arrest is present when officers "have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime."  Weyant, 101 F.3d at 852.  In assessing probable cause, courts look to the "totality of the circumstances" and consider the "facts available to the officer at the time of the arrest and immediately before it." Caldarola v. Calabrese, 298 F.3d 156, 162 (2d Cir. 2002).  The inquiry is objective, and the subjective beliefs or motivations of the arresting officer are irrelevant. Whren v. United States, 517 U.S. 806, 812-13 (1996).

Probable cause requires only a probability, not an actual showing, of criminal activity.  Illinois v. Gates, 462 U.S. 213, 244 n.13 (1983); Ricciuti v. New York City Transit Auth., 124 F.3d 123, 128 (2d Cir. 1997).  A police officer is not required to explore or eliminate every theoretically plausible claim of innocence before making an arrest.  Baker v. McCollan, 443 U.S. 137, 145-46 (1979).  Moreover, the existence of probable cause defeats a claim for false arrest even if an arrestee is ultimately revealed to be innocent.  Pierson v. Ray, 386 U.S. 547, 555 (1967); Weyant, 101 F.3d, at 852.  A District Attorney's decision not to prosecute is not relevant to the issue of whether the officers had probable cause to arrest. Quinn v. City of New York, No. 99-CV-7068 (JBW), 2003 U.S. Dist. LEXIS 3521, at *11-12 (E.D.N.Y. 2003) ("The District Attorney's failure to prosecute furnishes no support to plaintiff.  The validity of an arrest does not depend on a finding of innocence or any other disposition.").

First, plaintiffs point out that the arrest paperwork lists charges for gambling-related claims and marijuana.   Under <u>Devenpeck</u>, 543 U.S. at 153-54, the relevant inquiry is whether there was probable cause for any charge, not for those specifically listed at the time of the arrest.   Cox was not charged with anything for marijuana or gambling, so these arguments have no impact on his malicious prosecution claim.   Similarly, the fact that the District Attorney's office dismissed the case has no bearing on the validity of the underlying arrest or prosecution other than to establish that there was a favorable termination – an element of the claim that defendants do not dispute.   Plaintiffs are simply trying to distract from the central issue in the case by pointing out claims that may make Cox appear either sympathetic or innocent.   Neither are relevant for this motion.

i.  *Even if Plaintiff Cox was moved by unidentified ESU officers, defendants were entitled to believe he was arrested where he was found.*

To challenge his arrest and prosecution, plaintiff Cox argues that defendants  "should have known" that Cox was present in the bedroom where they found him only by "happenstance," and that it was "likely" that he had been moved prior to their entry.  (Pl's Mem. at 7-8.)    As plaintiffs' speculative language suggests, there is no proof that the BSGS defendants knew or even had reason to believe that Cox had been moved.

Plaintiffs' argument rests on the idea that, because these officers were aware that on some occasions, ESU moved individuals from where they were found, they were obligated to investigate whether plaintiff Cox had been moved by ESU.  Plaintiffs cite to no case law for this proposition, but instead only speculate that <u>had</u> they done so, the BSGS defendants would have discovered that Cox was moved from one room to another.

Nothing in the record supports this contention.  ESU Lt. Duignan, who was neither served nor deposed, was responsible for communicating with the non-ESU officers. (Defs. 56.1 ¶ 45.)  The decision as to whether to move individuals is up to the individual ESU officer in the room.  (Defs. 56.1 ¶ 60.)  However, the understanding is that ESU "usually" leaves people where they were apprehended, and any variation in that would be communicated to BSGS.  (Defs. 56.1 ¶ 94, 146).  In fact, there was a specific discussion prior to the execution of the search warrant between ESU and BSGS where they agreed that ESU would leave an individual on the ground, right where they had been found.  (Defs. 56.1 ¶ 149).  Though certain people were moved, those moves were specifically communicated to Det. Ortiz by ESU officers, and there is no record of a conversation regarding plaintiff Cox.  (Defs. 56.1 ¶ 150).

Even if ESU did move plaintiff Cox and failed to tell BSGS officers, the BSGS officers were allowed to rely on their prior discussions with ESU and their understanding that arrestees would be left in the rooms where they were found.  As discussed at greater length in defendants' moving papers since BSGS believed that ESU left people where they had been apprehended, they reasonably relied on the representations of their fellow officers and are entitled to qualified immunity.  Furthermore, plaintiff Cox's claims are brought only against four members of BSGS – Det. Ortiz, Sgt. Marcus, Lt. Carretta and D.I. Russo.  To the extent that plaintiff Cox claims that ESU was at fault, he has brought no claims against Det. Skelton, the sole ESU officer named in this action.

An arrest may be found unconstitutional if probable cause was in fact lacking, an officer who participates in the arrest is nonetheless immune from suit in his or her individual capacity under the doctrine of qualified immunity if it was objectively reasonable for him to rely on a fellow officer's report indicating the existence of probable cause.  Annunziata, 2008 U.S. Dist. LEXIS 42097, 2008 WL 2229903, at *4 (quoting Micalizzi v. Ciammara, 206 F. Supp. 2d

564, 577 (S.D.N.Y. 2002)); see also Anthony v. City of New York. 339 F.3d 129, 138 (2d Cir. 2003); Lauro v. Charles, 219 F.3d 202, 216 n.10 (2d Cir. 2000).  Even if there was no probable cause to arrest, for example, plaintiff Alcindor who claims to have been apprehended outside, BSGS members are entitled to qualified immunity when they relied on ESU's representations. Annunziata, 2008 U.S. Dist. LEXIS 42097, 2008 WL 2229903, at *4.

> *ii.  Plaintiff Cox had constructive possession of the gun found in the closet.*

Plaintiffs further argue that Cox cannot be said to have possessed the weapon, and therefore there was no probable cause for his arrest.  "[P]resence under a particular set of circumstances' may be sufficient to establish constructive possession of contraband in the same location as the defendant."  Id. (quoting United States v. Soto, 959 F.2d 1181, 1185 (2d Cir. 1992)).  See also United States v. Traylor, 396 Fed. Appx. 725, 727 (2d Cir. 2010) ("Just as 'presence under a particular set of circumstances' evidencing constructive possession may support a conviction, the circumstances of a defendant's presence may satisfy the less demanding standard of probable cause.") (internal citations omitted); Perry, 116 A.D.3d at 1255.

BSGS apprehended plaintiff Cox alone in an empty first-floor bedroom, where a 9 mm semiautomatic pistol containing eight bullets was recovered from inside of a closet.  Id. at ¶¶ 84, 88.  The fact that the room was empty except for the loaded weapon suggests that Cox brought the weapon into the room with him.  As for the fact that the weapon was discovered inside of a closet rather than on Cox's person, it was reasonable for BSGS officers to believe, under the law of constructive possession, that Cox had simply placed the weapon in the closet prior to BSGS's entry into the room.  See, e.g., Chalmers v. Mitchell, 73 F.3d 1262, 1272-1273 (2d Cir. 1996) (although Chalmers was apprehended in a different room of the apartment than the contraband recovered, the jury could have believed that Chalmers simply walked into the

- 10 -

other room after the police arrived).  The BSGS officers therefore had probable cause, or at least arguable probable cause, for the arrest and prosecution of plaintiff Cox.


**POINT II**

**PLAINTIFF COX IS NOT ENTITLED TO SUMMARY JUDGMENT WITH RESPECT TO HIS DENIAL OF A RIGHT TO FAIR TRIAL CLAIM AS THERE IS NO EVIDENCE THAT ANY OF THESE DEFENDANTS COMMUNICATED INFORMATION KNOWN BY THEM TO BE FALSE TO THE PROSECUTOR.**

As discussed in defendants' moving papers, defendants are, at the very least, entitled to qualified immunity on plaintiff Cox's fair trial claim.  In order to establish a denial of fair trial claim, a plaintiff must prove an (1) investigating official (2) fabricates evidence (3) that is likely to influence a jury's decision, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of liberty as a result.  See Jocks v. Tavernier, 316 F.3d 128, 138 (2d Cir. 2003); Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123, 130 (2d Cir. 1997).  In Ricciuti, the court explained when a police officer creates false information that is likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial.  Id.

As an initial matter, there is no evidence in plaintiffs' motion that Sgt. Marcus, Lt. Carretta or D.I. Russo forwarded any information to the prosecutors.  Therefore, this claim must be dismissed as to them.  At best, plaintiffs' claims amount to an allegation that Det. Ortiz inadvertently passed along false information regarding where Cox was located.  However, there is no indication that any of the named officers "created" false information.  At most, the officers

properly relied on information provided by their "fellow officer" and should be granted qualified immunity.

The same analysis applies in the context of a Denial of a Right to a Fair Trial claim.  The Supreme Court has recognized that in some cases, in the interests of efficiency, a District Court may assume that a constitutional infraction occurred, in order to determine if an offending officer nevertheless behaved reasonably and is entitled to immunity on that basis. Askins v. City of NY, 2012 US Dist LEXIS 19940 at *11 (S.D.N.Y Feb. 13, 2012) (discussing Pearson, 555 U.S. at 223); see also Thomas, 2010 U.S. Dist. LEXIS 137166, 2010 WL 5490900, at *13.  As discussed by the Court in Askins, although a violation of the plaintiff's rights may have been carried out by unnamed defendants, the named defendants were situated differently. Id.

The evidence in this case show that, to the extent that there is a claim that the Det. Ortiz forwarded "fabricated" evidence to the prosecutors, he did nothing more than forward on information that was relayed to him by non-party officers.

As discussed above, Det. Ortiz reasonably relied on the information conveyed to him by the ESU officers who made the initial entry.  Given the history with ESU, it was reasonable for the defendants to rely on their reports regarding where the plaintiffs were found. Viewed objectively, the Det. Ortiz believed they were legally justified to pass on their understanding of where ESU had discovered the plaintiffs.  Even if this was incorrect, it cannot be said to have been "fabricated" by these defendants who are therefore entitled to qualified immunity.

## POINT III

### OFFICERS WERE PERMITTED TO DETAIN PLAINTIFFS OUTSIDE FOR THE DURATION OF THE SEARCH

The Supreme Court has held that a search warrant for a home "implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted." Michigan v. Summers, 452 U.S. 692, 705 (1981). Here, three plaintiffs, Gary Jeanty, Billy Hippolyte and Matthew Nelson, were seized in the backyard of the premises and detained in handcuffs while the search was of the premises was completed. (Defs. 56.1 ¶¶ 156-157). No criminal charges were filed against any of them, (Id. at ¶ 158). However, their seizure was lawful and their claims must be dismissed. Plaintiffs claim that the definition of premises should be limited to only the inside of the house and that the time-period is limited only to that period necessary to secure the scene. Neither of these are supported by law.

In Summers, The Court "justified the detention of George Summers by reference to the interests of law enforcement in (1) "preventing flight in the event that incriminating evidence is found"; (2) "minimizing the risk of harm to the officers"; and (3) facilitating "the orderly completion of the search." Michigan v. Summers, 452 U.S. 692, 702-03 (1981)). The question of whether a detention was reasonable must be viewed in light of the totality of the circumstances. See Michigan v. Chesternut, 486 U.S. 567, 572 (1988) (eschewing a bright-line rule in favor of a totality-of-the-circumstances approach in the determination of the reasonableness of a seizure under the Fourth Amendment); United States v. Vargas, 369 F.3d 98, 101 (2d Cir. 2004) (applying a totality-of-the-circumstances approach to determine the legality of a warrantless search and seizure); United States v. Adegbite, 877 F.2d 174, 178 (2d Cir. 1989) (same). The circumstances surrounding the detention must be viewed "through the eyes of a

reasonable and cautious police officer on the scene guided by his experience and training." United States v. Barlin, 686 F.2d 81, 87 (2d Cir. 1982).

In *Summers* and later cases, Courts have ratified the detention of individuals found within or immediately outside a residence at the moment the police officers executed the search warrant.  See *Michigan v. Summers*, 452 U.S. 692 (1981) (finding that the police were permitted to detain George Summers who was found descending the front steps of his house while they were preparing to execute a search warrant of the premises); *United States v. Fullwood*, 86 F.3d 27, 29-30 (2d Cir. 1996), (permiting the detention of individuals entering a vehicle in the driveway of a house).  Furthermore, Courts have permitted detentions of several hours while a search warrant is being executed.  See Muehler v. Mena, 544 U.S. 93, 100, (2005). In that case, the Court considered the legality of a 2-3 hour detention in handcuffs while a search was ongoing.  Id.  In balancing the Summers factors, the Court considered that the officers were searching a gang house for dangerous weapons, and ultimately found that the detention was lawful.  Id.

Here, officers were executing a search warrant for a building that was known to be a gang location.  (Defs. 56.1 ¶¶ 2).  Officers were aware that the backyard of the building was a known gang location where members of the Crips would congregate.  (Id. at ¶ 4).  Several plaintiffs testified at their depositions that they were outside the house and ran into the house only once they saw the police approach.  Plaintiffs Matthew Nelson, Gary Jeanty and Billy Hippolyte, each remained in the backyard when the warrant was executed.  (Id. at ¶ 162, 175, 185).  After approximately 15 minutes, the outdoor plaintiffs were permitted to get off the ground and asked to face the wall.  (Id. at ¶ 165).  After some period of time, described as between an hour up to "several" hours (none of the plaintiffs was able to give a specific time

- 14 -

frame for their detention) these plaintiffs were released without charges.  (Id. at ¶ 169, 181, 190).

Looking at the totality of the circumstances and balancing the interests at stake, this detention was lawful.  Like in Muhler, officers were dealing with what they believed to be a gang location where weapons were present.  "The governmental interests in not only detaining, but using handcuffs, are at their maximum when . . . a warrant authorizes a search for weapons". Muehler v. Mena, 544 U.S. 93, 100 (2005).  Furthermore, they were held only while the search of the premises was ongoing.  Initial entry was made into the front of the house, while the rear wasn't by ESU until after the front had been secured.  (Defs. 56.1 at ¶ 63).  Once the premises were secure, BSGS conducted a search of both floors of the premises to search for contraband. (Id. at ¶ 105).  The outdoor plaintiffs were released at either prior to or at the same time that the indoor plaintiffs were moved into police vans.  (Id. at ¶ 170).  Plaintiff Nelson recalls seeing Ali Kettrels being placed into a police car.  (Id. at ¶ 171).  Plaintiff Kettrels arrived at the police precinct at 12:05 a.m., meaning that at most, the outdoor plaintiffs were held for 2.5 hours.  (Id. at 151).

Plaintiffs argue that there were no specific facts associating these plaintiffs with the residence or the criminal activity underling the search.  First, in order to support these facts, plaintiffs point only to cases outside of this circuit, nothing within the Second Circuit, to support this narrow reading of Summers.  In addition, plaintiffs conveniently ignore the fact that numerous plaintiffs testified that they were initially outside the premises and only ran into the premises when the police arrived.  Officers then entered the bottom apartment, where a total of five pounds of marijuana and two guns along with ammunition were found.  It was certainly reasonable to detain these plaintiffs, who could be associated with the inside of the building, while the search was completed to ensure that those few people who remained in the backyard

were not connected to the contraband found inside.  Given the circumstances here, a search could certainly take up to 2.5 hours, it was reasonable to detain these three plaintiffs during the execution of the warrant.

## **CONCLUSION**

For the foregoing reasons, and for the reasons advanced in defendants' motion for summary judgment, defendants respectfully request that the Court deny plaintiff's partial motion for summary judgment, and grant defendants' motion in its entirety.

Dated:        New York, New York
              September 26, 2017

                                    ZACHARY W. CARTER
                                    Corporation Counsel of the City of New York
                                    *Attorney for Defendants* 100 Church Street, 3rd
                                    Floor
                                    New York, New York 10007
                                    (212) 356-3540


                              By:      /s/
                                    Elissa B. Jacobs
                                    *Senior Corporation Counsel*


cc:      VIA E-MAIL
         Michael B. Lumer
         *Counsel for Plaintiff*
         225 Broadway, Suite 2700
         New York, NY 10007