UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
TEVON THOMAS, et al.,

                Plaintiff,

    -against-                          14 CV 7513 (ENV) (VMS)

CITY OF NEW YORK,                **Date of Service: October 24, 2017**

                Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X


# PLAINTIFFS' REPLY MEMORANDUM OF LAW
# IN FURTHER SUPPORT OF THE MOVING PLAINTIFFS'
# MOTION FOR SUMMARY JUDGMENT


LUMER LAW GROUP
225 Broadway, Suite 2700
New York, New York 10007
(212) 566-5060

Attorneys for Moving Plaintiffs
Ravin Cox, Matthew Nelson,
Billy Hippolyte, and Gary Jeanty

<u>Of Counsel</u>
Michael Lumer, Esq.

## ARGUMENT

### POINT I

**PLAINTIFF COX HAS ESTABLISHED THAT HE WAS ARRESTED WITHOUT PROBABLE CAUSE AND IS THEREFORE ENTITLED TO SUMMARY JUDGMENT ON HIS CLAIM FOR FALSE ARREST**

The defendants argue that plaintiff cannot establish that the defendants knew Cox had been moved by ESU to the bedroom where the handgun was found. As Cox was the only person in the room by the time the BSGS defendants entered, they argue, it was reasonable to conclude that he had constructive possession of the handgun found on a shelf in a closet. This defense would have no merit, as defendants tacitly admit, if they knew Cox had been seized elsewhere and then placed in the room, or were aware that they could not rely on his post-arrest location in that bedroom of his own volition. However, it is quite clear that the defendants were well aware that Cox had been moved into that room by ESU, and thus never had constructive possession of the gun later found in the closet.

The BSGS defendants' knowledge that ESU was moving seized individuals in both apartments, including Cox, is addressed at length in the plaintiffs' response to defendants' own summary judgment motion. As Cox (and the other plaintiffs) point out in their Local Rule 56.1 Counter-Statement ("Pltf. Opp. LR 56.1") and the exhibits before this Court through defendants' motion practice, there is ample evidence that the defendants witnessed ESU officers relocating people inside the apartments, and that ESU officers never found anyone alone in the bedroom. The BSGS defendants therefore had to know that Cox was not found in the bedroom but rather was placed there by ESU and thus, under their own version of the facts, there was no basis for plaintiff's arrest.

The Second Circuit has succinctly defined "[c]onstructive possession [as existing] when

a person has the power and intention to exercise dominion and control over an object." *United States v. Dhinsa*, 243 F.3d 635, 676 (2d Cir. 2001). Decisional law makes clear that Cox's "mere presence" in the bedroom is insufficient to establish constructive possession. *United States v. Thomas*, 2014 U.S. Dist. LEXIS 193864, at *8-9 (E.D.N.Y. Aug. 29, 2014) (quoting *People v. Scott*, 206 A.D.2d 392, 614 N.Y.S.2d 739, 741 (App. Div. 2d Dep't July 5, 1994) (citation omitted)); *see also*, *Guzman v. United States*, 2013 WL 543343, at *5 (S.D.N.Y. Feb. 14, 2013), on reconsideration, 2013 WL 5018553 (S.D.N.Y. Sept. 13, 2013) (quoting *United States v. Rodriguez*, 392 F.3d 539, 548 (2d Cir. 2004) (citation omitted); *see also United States v. Brown*, 3 F.3d 673, 681 (3d Cir. 1993) (holding that, "[w]hile the evidence may be sufficient to show that [the defendant] was residing at the [co-defendant's] home and that she knew that drugs were in the house, the evidence is not sufficient to support a finding that she exercised dominion and control over the drugs")). Evidence that criminal conduct was likely, or even certainly, occurring in the premises at some point that day or evening does not provide a basis to arrest everyone in or around the apartment. *United States v. Rodriguez*, 392 F.3d 539, 548 (2d Cir. 2004) (mere proximity or presence insufficient to establish probable cause).

As Cox has testified, and defendants concede, Cox – a guest in the apartment – was in the front room when ESU arrived and he was in the same front room when he was cuffed and seized by ESU officers. He was then moved to the empty bedroom and left there until the BSGS officers arrived. That Cox was not found in the bedroom, and was but was one of many people relocated by ESU, is confirmed by ESU's own paperwork that established nobody was seized in that bedroom. (Plftf. Opp. LR 56.1 ¶¶ 87, 88, 90).

Contrary to their protestations in opposition to this motion, the BSGS defendants were

2

well aware of this fact. According to their own paperwork, when ESU officers entered the first floor apartment, they found 3 individuals in the one room and 10 individuals in another. Nobody was found in the second bedroom. This information was memorialized in the ESU team's Warrant Execution Supplemental Report. Notably, ESU will move people it has seized as circumstances dictate. In this case, both the first floor and basement apartments were very crowded, as there were 13 civilians inside each of the units, as well as about 12 to 13 ESU officers. (See the following exhibits the Declaration of Michael Lumer in opposition to defendants' motion for summary judgment dated September 25, 2017: Exhibit 7, Skelton dep., at 208:23-209:5; Exh. 16, ESU Warrant Execution Supplement Report).

More to the point, the BSGS defendants certainly knew that ESU had was moving people around before BSGS officers entered. Russo, Ortiz, and other BSGS officers were told by ESU where everyone had been originally seized, and they further knew that at least some of the occupants in this case had actually been relocated by ESU members after ESU had seized them. (See Pltf. Opp. LR 56.1 ¶ 90).

Thus, as in initial matter, when BSGS entered, they were aware from their own observations that ESU was moving people around, and thus BSGS could not in any way assume that anyone had been found ESU in the same room they were in when the BSGS defendants finally entered. Having determined that ESU was moving people to address the overcrowding in both apartments, it is obvious that BSGS officers would consult with ESU, absent their willful blindness or outright incompetence, if only to get the most basic information, such as who had been found where, and whether any criminal conduct had been interrupted by ESU's entry.

The question is simply whether the defendants had sufficient evidence to reasonably

3

believe that Ravin Cox had exercised custody, control, and dominion over the gun on a shelf in the bedroom closet. For this to be so, it had to be reasonable under the circumstances for the BSGS defendants to conclude, at a minimum, that Cox was aware of the gun in the closet, and that he was in some manner complicit in the possession of the weapon. No reasonable officer could have believed this to be so under these circumstances.

## POINT II

### PLAINTIFF COX IS ENTITLED TO SUMMARY JUDGMENT AGAINST DEFENDANTS FOR MALICIOUS PROSECUTION AND THE DENIAL OF THE RIGHT TO A FAIR TRIAL

The defendants admit that Ortiz communicated to the KCDA that Cox's arrest was predicated on his proximity to the closet where the gun was found. It is equally clear that the officer-in-charge, defendant Russo, was with Ortiz when Cox was found by these defendants in the bedroom, and that the three supervisory defendants (Russo, Carretta, and Marcus) conferred with each other and agreed collectively to arrest Cox for the handgun. Thus, if the defendants knew that Cox's presence in the bedroom at the time of their belated entry was a matter of random happenstance brought about by an ESU officer moving Cox into the room after he was seized, that is clearly something that should also have been communicated to the KCDA. Put differently, Ortiz's failure to tell the prosecutors the entire truth is tantamount to lying. Given defendants' own admission that they knew people were being relocated and that they discussed with ESU where people had been first found, as well as ESU's own paperwork that establishes that nobody was found in that bedroom, it is clear that Ortiz's statement to prosecutors that Cox was found in the bedroom with the gun was materially and fundamentally misleading, if not

outright false. This being the only basis for Cox's prosecution, the weight of Ortiz's fabrication cannot be minimized.

As for the remaining BSGS defendants, all three were supervisory officers who participated in the arrest and charging decision-making processes. All three had the authority to veto the arrest, or otherwise intervene in the charging process or prosecution. None made any such attempt. Accordingly, all three were are liable to plaintiff both as direct participants in the decision to initiate Cox's prosecution, and for their failure to intervene as the wrongful prosecution moved forward. As a result, Ravin Cox was arrested, detained, and then jailed for nearly a week until the KCDA dismissed every single prosecution defendants initiated. Ortiz may have played the point position in inflicting these harms on Cox, but he did so on behalf of all four defendants, and the City as a whole. All four defendants had every opportunity to prevent or limited these injuries. All four deliberately and willfully chose to continue the misconduct until the KCDA brought it to a close.

## POINT III

### PLAINTIFFS NELSON, HIPPOLYTE AND JEANTY ARE ENTITLED TO SUMMARY JUDGMENT

The defendants do not dispute the key facts underlying these three plaintiffs' motion for summary judgment. Specifically, the plaintiffs were outside the premises when the defendants and other officers arrived and were not seen exiting or entering the premises, or attempting to do so. Furthermore, the defendants do not claim that any of these three plaintiffs were otherwise violating the law. The defendants' response boils down to the malodorous claim that because the BSGS defendants believed the location to be a gang hangout, they were free to

seize, search, handcuff, and then continue to detain any and all black males that happened to be in the general vicinity of the building that housed the apartments for which a warrant existed. This noxious argument is without merit.

The warrants authorized the entry into and search of two apartments inside 641 East 59 Street, a fully attached private home that is but one of many such attached homes. The buildings share a communal driveway that allows residents and guests to drive to the rear of their homes, where the basement apartment entrances are located. As discussed at greater length in the opening brief (and in response to defendants' motion for summary judgment), officers executing a search warrant may take reasonable measures "to secure the premises and to ensure their own safety and the efficacy of the search," which may include "detain[ing] occupants of the premises while a proper search is conducted." *L.A. County v. Rettele*, 550 U.S. 609, 614 (2007); *Michigan v. Summers*, 452 U.S. 692, 705 (1981). This rather straightforward rule allows officers executing a warrant to "detain the occupants of the premises while a proper search is conducted" and does not require any individualized suspicion. *Id.* at 705; *Muehler v. Mena*, 544 U.S. 93, 98 (2005).

Nonetheless, *Summers'* exception does not extend "beyond the immediate vicinity of the premises being searched" and is limited to occupants of the premises at issue. *Bailey v. United States*, 133 S. Ct. 1031, 1042-43 (2013). As another district court in this circuit noted:

> Under Summers, a detention incident to search is constitutional only if 'limit[ed] ... to the area in which an **occupant** poses a real threat to the safe and efficient execution of a search warrant.' In determining whether an **occupant** was lawfully detained within such 'immediate vicinity' of the premises to be searched, courts may consider 'the lawful limits of the premises, whether the **occupant** was within the line of sight of his dwelling, the ease of reentry from the **occupant's** location, and other relevant factors.' Here, nothing in the record suggests — and Defendants do not claim—that Plaintiff was an **occupant** of the searched apartment

6

>at any relevant time, had any intention of entering it or otherwise had any connection to it.

*Cabral v. City of New York*, 2014 WL 4636433, at *4 (S.D.N.Y. Sept. 17, 2014), adhered to, 2015 WL 4750675 (S.D.N.Y. Aug. 11, 2015), and aff'd, 662 F. App'x 11 (2d Cir. 2016) (quoting *Bailey*, at 1042) (emphasis supplied)).

Thus, that the defendants anticipated finding guns or drugs inside either of the apartments is irrelevant. It is undisputed is that the defendants encountered civilians outside of a three-family home (attached to other similar homes on a residential block). The defendants have not articulated any claims that these three plaintiffs were seeking to enter or exit the premises, or that they had ever been inside the premises, or that they were seemingly interfering with ESU's entry into the premises. Certainly, the defendants offer no evidence that they believed any of these particular plaintiffs were "occupants" of the premises.

What defendants are actually arguing is that they believed that the two apartments inside 641 East 59 Street were connected to a street gang. Therefore, defendants suggest, it was lawful and appropriate to seize the three plaintiffs even though the only apparent basis for the seizure was that they were black and they were male. Implicit to defendants' argument is the notion that evidence of these plaintiffs' race and gender was sufficient to not only seize them for the period of approximately 15 minutes ESU needed to secure the apartments, but to continue to hold them in handcuffs for no reason other than their proximity to the building. This unfortunate but inescapable conclusion falls far outside the boundaries articulated by *Summers*.

Moreover, even if the seizure of these three plaintiffs was initially lawful under the circumstances, there was no basis for any continued detention beyond the few minutes ESU required to secure the premises. It is plain that the defendants seized these plaintiffs for no

reason other than convenience, or perhaps as a reflexive action. It is also undisputed that these three plaintiffs were not engaged in any criminal conduct and had no outstanding warrants. Finally, it is equally obvious that the three plaintiffs were held well beyond ESU's entry into the premises, and that they remained handcuffed and in defendants' custody long after ESU had completed their task and left the scene. This seizure and prolonged detention was facially unlawful and unconstitutional, and these three plaintiffs are entitled to summary judgment against the individual BSGS defendants.

## CONCLUSION

For the foregoing reasons, the Moving Plaintiffs' motion should be granted in all respects.

Dated:   New York, New York
         October 24, 2017

                                          LUMER LAW GROUP
                                          Attorneys for Moving Plaintiffs
                                          225 Broadway, Suite 2700
                                          New York, New York 10007
                                          (212) 566-5060

                                          */s/ Michael Lumer*
                                          Michael Lumer

cc:   All counsel of record (by email and ECF)