UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
TEVON THOMAS, et al.,

                  Plaintiffs,

        -against-

THE CITY OF NEW YORK, et al.,

                  Defendants.
------------------------------------------------------------- x
HAROLD BROWNE, et al.,

                  Plaintiffs,

        -against-

THE CITY OF NEW YORK, et al.,

                  Defendants.
------------------------------------------------------------- x

FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.
★ JUL 31, 2019 ★
BROOKLYN OFFICE

MEMORANDUM AND ORDER

14-CV-7513 (ENV) (VMS)

16-CV-4224 (ENV) (VMS)

VITALIANO, D.J.

    These consolidated civil rights actions, brought pursuant to 42 U.S.C. § 1983, were filed by plaintiffs Tevon Thomas, Matthew Nelson, Billy Hippolyte, Gary Jeanty, Milton Sears, David A. Alcindor, Sheldon Nyack, Ravin Cox, Zandaa Dewar, Herby Aime, Jobe Leemow, Markous Fray, Harold Browne, Adolpheus McLeod, and Dwayne Jones[1] against New York City Police

---

[1] Former plaintiffs Ryan Clyne, Lloyd Henry, Ali Kettrles, Dwyte Pilgrim, Alonzo Sealey, and Brandon Thomas accepted Rule 68 offers of judgment and are no longer parties. No. 14-CV-7513 ("Thomas Action"), Dkts. 78-83, 125. Robert Cush also accepted a Rule 68 offer of judgment, though judgment has not yet entered as to him. No. 16-CV-4224 ("Browne Action"), Dkts. 34, 65; Dkt. 57 at 4 n.1. As of 2016, Alishea Walters was appearing *pro se*, but she has not joined in any amended pleading or filed any opposition to the BSGS defendants' motion for

1



Department ("NYPD") officers Joebian Ortiz, William Russo, Peter Carretta, Gary Marcus (collectively, the "BSGS defendants"), and Alfredo Skelton. *See* Thomas Action, Dkt. 37 ("Thomas Compl."); Browne Action, Dkt. 18 ("Browne Compl.").[2] Now before the Court is the Report and Recommendation of Magistrate Judge Vera M. Scanlon, recommending that plaintiffs' motion for partial summary judgment be denied and defendants' motion for summary judgment be granted in part and denied in part. Dkt. 129 (the "R&R").[3] The parties have filed limited objections to the R&R. *See* Dkts. 131 ("Pls.' Obj."); 132 ("Defs.' Obj."); 133 ("Pls.' Resp."); 134 ("Defs.' Resp."). After careful consideration of the R&R and the parties' objections, the Court adopts the R&R in its entirety.

## Background[4]

I. The Search

On May 15, 2014, NYPD officers executed a search warrant on the first-floor and basement apartments at 641 East 59th Street in Brooklyn. R&R at 3, 6. The first stage of the search was carried out by NYPD's Emergency Services Unit ("ESU"), and the second, by its Brooklyn South Gang Squad ("BSGS"). ESU was tasked with simply securing the apartments, while BSGS was tasked with making any probable cause determinations and resulting arrests. In

---

summary judgment. *See* Mar. 30, 2016 Order; Thomas Compl. ¶ 1. Accordingly, the question of Walters' continued status as a plaintiff is respectfully referred to Magistrate Judge Scanlon to determine, and, if she is still a formal party, to issue an order directing Walters to show cause why her case should not be dismissed for failure to prosecute.
[2] All claims asserted against the City of New York have been voluntarily dismissed. R&R at 2 n.2. The Clerk of Court is directed to terminate the City of New York from the docket and amend the case captions accordingly.
[3] Going forward, all docket citations are to the Thomas Action unless otherwise indicated.
[4] Factual references and conclusions are drawn from the R&R, except where they remain disputed on objection. *See* R&R at 4-21.

line with this general plan, ESU entered and secured each apartment, starting with the first floor, as BSGS waited outside. Once ESU had secured the first-floor apartment, BSGS entered to find 13 people handcuffed; similarly, once ESU had secured the basement apartment, BSGS entered to find another 13 people waiting handcuffed. R&R at 7-8. Each apartment took less than 15 minutes to secure. *Id.* at 17-18. Marijuana, gambling paraphernalia, and firearms were found in the apartments. *Id.* at 12.

The BSGS team included moving defendants Captain William Russo, Lieutenant Peter Carretta, Sergeant Gary Marcus, and Detective Joebian Ortiz. According to supervising officer Captain Russo, the plan for the search, as laid out in an advance tactical meeting, was for ESU to handcuff the individuals in each unit and leave them in place. R&R at 11. However, some individuals were moved during the course of ESU's sweep. *Id.* at 11-12. This was in keeping with ESU's general practice of moving individuals as needed during a search to facilitate their efforts to secure the area, involving unique discretionary decisions made in real time. *Id.* at 10. For the most part, ESU and BSGS did not communicate during the search as to the movements of each arrestee. *Id.* at 12. As a result, when the BSGS defendants entered the apartments, they did not know plaintiffs' respective locations at the time of ESU's entry, nor did they ask ESU for this information. *Id.* at 7-8, 34. The BSGS defendants were generally aware that at least some individuals had been moved from their original locations. *Id.* at 11-12.

Specifically, Ravin Cox was seized by ESU officers in the front room of the first-floor apartment, handcuffed, and moved into a bedroom. R&R at 14. Captain Russo and Detective Ortiz later moved him, still handcuffed, from the bedroom to the front room, and arrested him for possession of a firearm found in the bedroom closet. *Id.* at 14-15. Nelson, Hippolyte, and Jeanty were outside the building when ESU and BSGS arrived; they had not been inside the apartments

3

at all that evening. *Id.* at 16. They were searched, handcuffed, and detained outside as BSGS finished its sweep of the apartments. *Id.* at 18. The amount of time they were detained remains disputed; plaintiffs assert that it was anywhere from one to four hours, while the BSGS defendants respond that the detention probably lasted less than 30 minutes. *Id.* at 17-18. As for the remaining plaintiffs, each claims to have been moved during the search from his or her original location.[5] *Id.* at 34-35.

Following the search, 25 individuals were arrested, including plaintiffs, for constructive possession of the contraband found in the apartments. R&R at 9, 16-17. Captain Russo, with the assistance of Lieutenant Carretta and Sergeant Marcus, made the decision to arrest 24 of the 25 individuals, including all plaintiffs except for Cox; ESU was not involved in those decisions. *Id.* at 9. The Kings County District Attorney's office ("DA") ultimately declined to prosecute or dismissed the charges against all 25 individuals. *Id.* at 9-10.

II. <u>R&R</u>

Following the close of discovery, the BSGS defendants moved for summary judgment as to all plaintiffs, while Cox, Hippolyte, Nelson and Jeanty (the "moving plaintiffs") cross-moved for partial summary judgment against the BSGS defendants.[6] *See* Dkts. 107-13; 114-24; R&R at

---

[5] The remaining plaintiffs are 11 in number: Tevon Thomas, Milton Sears, David Alcindor, Sheldon Nyack, Zandaa Dewar, Herby Aime, Jobe Leemow, Markous Fray, Harold Browne, Adolpheus McLeod, and Dwayne Jones.

[6] Plaintiffs assert false arrest claims against the BSGS defendants. Thomas Compl. at 13-16; Browne Compl. at 9-11. All plaintiffs except Hippolyte, Nelson, and Jeanty also assert claims for malicious prosecution and denial of the right to fair trial against the BSGS defendants. Thomas Compl. at 18-19; Browne Compl. at 11-12. In addition, Fray asserts false arrest, malicious prosecution, and fair trial claims against Officer Skelton; those claims are the only claims asserted against Officer Skelton. *See* Thomas Compl. at 16-17; R&R at 4.

2. Those are the motions that were referred to Judge Scanlon.

In her proposed resolution of them, Judge Scanlon found that genuine disputes of material fact exist regarding "whether any of [the] Plaintiffs constructively possessed marijuana, firearms or gambling paraphernalia because they may not have been found by BSGS in locations where they were located at the time of ESU's entry." R&R at 36. The question of probable cause, she explained, is further complicated by disputes of material fact as to whether plaintiffs resided at the apartments, were present or aware of the contraband (which may or may not have been in plain view), and exercised dominion and control over the areas from which the contraband was recovered. *Id.* at 36-37. Judge Scanlon found further fact disputes "as to whether Defendants made a reasonable inquiry of ESU to ascertain readily available information as to the facts underlying the arrests," which precluded the application of qualified immunity. *Id.* at 45. In addition, she determined, the record does not establish whether defendants "did in fact pass on ESU-provided information or made their own unsubstantiated assumptions about the facts and passed those on" to the DA. *Id.* at 48.

Consequently, Judge Scanlon recommended that the BSGS defendants' motion for summary judgment be granted only as to Jones's claims (for false arrest, malicious prosecution, and denial of the right to fair trial), but denied as to all other remaining plaintiffs. R&R at 37, 40, 45, 49. She further recommended denial of the moving plaintiffs' motion for partial summary judgment on their claims against the BSGS defendants (consisting of the false arrest, malicious prosecution, and fair trial claims brought by Cox; and the false arrest/unlawful seizure claims brought by Nelson, Hippolyte, and Jeanty). *Id.* at 25, 58, 62.

As for Jones, Judge Scanlon found that the BSGS defendants had arguable probable cause for his arrest on charges of criminal possession of a weapon and criminal possession of

5

marijuana. R&R at 21, 49. Jones, also known by the alias "JD Boogie," was seized by ESU in the bathroom of the basement apartment. *Id.* at 21. Although there was no contraband in the bathroom, signs signed by "Boogie" were posted throughout the basement apartment with instructions such as "keep the place clean." *Id.* Judge Scanlon concluded that these signs combined with Jones's presence in the basement apartment established the existence of, at least, arguable probable cause for his arrest and prosecution, and, as a result, she recommended the dismissal of his claims on the basis of qualified immunity.[7] *Id.* at 52-58.

## Standard of Review

In reviewing an R&R, a district judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). Moreover, in conducting its review, the "district court need only satisfy itself that there is no clear error on the face of the record" to accept the reviewed R&R, provided no timely objection has been made. *Urena v. New York*, 160 F. Supp. 2d 606, 609-10 (S.D.N.Y. 2001) (quoting *Nelson v. Smith*, 618 F. Supp. 1186, 1189 (S.D.N.Y. 1985)); *see also Thomas v. Arn*, 474 U.S. 140, 149-50, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985). Clear error exists "where, upon a review of the entire record, [the district judge] is left with the definite and firm conviction that a mistake has been committed." *Saveria JFK, Inc. v. Flughafen Wien, AG*, No. 15-CV-6195 (RRM)

---

[7] JD Boogie was also a target of the search warrant, based on information provided by a confidential informant ("CI"). The CI had tipped off BSGS that he had seen Jones at the apartments in possession of marijuana and a firearm on multiple occasions, and that he believed Jones lived at and controlled the apartments. R&R at 32, 50. However, Judge Scanlon found the CI's tip insufficient to establish probable cause, because it was made to an officer who is not a party to this action and who did not submit any sworn testimony, and defendants refused to turn over the CI file in discovery. *Id.* at 50-52.

6

(RLM), 2017 WL 1194656, at *2 (E.D.N.Y. Mar. 30, 2017). A district judge, however, is required to "determine *de novo* any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); *see also Arista Records, LLC v. Doe 3*, 604 F.3d 110, 116 (2d Cir. 2010). Objections that are general, conclusory, or "merely recite the same arguments presented to the magistrate judge" do not constitute proper objections and are reviewed only for clear error. *Sanders v. City of New York*, No. 12-CV-113 (PKC) (LB), 2015 WL 1469506, at *1 (E.D.N.Y. Mar. 30, 2015) (citation omitted).

Discussion

I. <u>Plaintiffs' Objections</u>

    *A.   JD Boogie*

Plaintiffs argue that Judge Scanlon failed to recognize a dispute of material fact as to whether defendants reasonably believed Jones to be JD Boogie at the time of the search.[8] First, they note that the May 13, 2014 search warrant application, sworn by non-party Detective Timothy Sheridan, refers to a suspect named JD Boogie without identifying him by his legal name. *See* Dkt. 117-24 (Defs.' Ex. X). Though accurate, this statement does not support the inference that none of the officers understood JD Boogie to be Jones at the time of the search; it is not even probative on that point. Pls.' Obj. at 6. An informational report completed by Detective Ortiz on May 12, 2014, three days prior to the search, states that a CI "identified JD

---

[8] Plaintiffs also argue that there is a question of fact as to whether Jones is actually JD Boogie, but this issue is not material; the touchstone analysis for probable cause is the officers' reasonable belief, regardless of whether that belief was ultimately vindicated.

7

Boogie as Dwayne Jones . . . thru [*sic*] an omni photo of a set book."[9] Dkt. 117-25 (Defs.' Ex. Y). Detective Ortiz, moreover, testified in his deposition that JD Boogie had been identified as Jones before the search. Dkt. 117-1 (Defs.' Ex. A ("Ortiz Dep. Tr.")) at 66-68. The fact that a search warrant application completed by one officer does not mention Jones by name does not contradict the other record evidence supporting another officer's belief that Boogie was Jones. Bluntly, that Jones was known to the NYPD unit responsible for the search in advance is beyond genuine dispute.

Plaintiffs next argue that "'JD' stands for John Doe, meaning, that Sheridan had no idea what Boogie's name was." Pls.' Obj. at 6. Nowhere in the warrant application does Sheridan state that JD means John Doe, and plaintiffs cite to no evidence in support of that interpretation. Sheer speculation does not create a genuine issue of material fact.

Turning back to the CI, plaintiffs focus on the CI's assertion that Boogie was a Crips member, noting that the officers acknowledged that they did not know prior to the search if Jones belonged to the gang. Pls.' Obj. at 7. Indeed, Detective Ortiz testified that, prior to the search, he understood Jones to be an associate of known Crips members, but was not sure if Jones was a member of the gang. He further explained that, at the time of the search, he had not concluded

---

[9] Plaintiffs also complain that the CI's information "was deliberately withheld from [them] throughout the litigation, thus preventing plaintiffs from challenging or otherwise testing the reliability of . . . the alleged informant . . . ." Pls.' Obj. at 7. Although the Court did not rule on the issue, the docket reflects that the parties engaged in various discovery disputes regarding the information underlying the search warrant application. *See* Dkt. 25 at 6-7; Dkt. 117-1 at 53. On November 10, 2015, Judge Scanlon heard argument on the parties' dispute over plaintiffs' request for the investigatory file underlying the search warrant, and, on June 17, 2016, the parties filed a letter informing her that they had reached an agreement regarding production of the investigatory file that rendered the discovery motion moot. *See* Dkts. 38, 43.

8

that Jones was a Crips member, since he wanted to ask Jones himself before drawing that conclusion. Ortiz Dep. Tr. at 278. This evidence in no way creates a genuine issue of fact by undermining defendants' showing that the officers reasonably believed Jones was Boogie. Indeed, the evidence is not even contradictory. It is possible for the officers to have been told that the CI knew Jones as Boogie, and as a Crips member, and for the officers to remain unsure about Jones's personal status with the Crips while, at the same time, believing him to be Boogie.

Plaintiffs hinge their final argument on Jones's arrest report, contending that, although the search warrant describes JD Boogie as a resident of the first-floor or basement apartment, Jones's arrest report lists his permanent address as 58 East 31st Street. Pls.' Obj. at 7; see Dkt. 118-1 (Defs.' Ex. AA (Jones arrest report)). Jones's potential affiliation with more than one address does not mean that the officers did not believe he had dominion and control over the basement apartment, as required for there to have been arguable probable cause for his arrest on constructive possession charges. Furthermore, the officers were not required to conduct a further investigation to determine whether the basement apartment was his sole address prior to completing his arrest, which was legally immaterial in light of the facts suggesting he had dominion and control over the basement apartment.

Since *de novo* review of the record establishes that the defendants had a reasonable basis to believe Jones was JD Boogie, they are entitled to qualified immunity as to his claims. Accordingly, the objection is overruled, Magistrate Judge Scanlon's R&R on this point is affirmed, and the motion for summary judgment is granted to the BSGS defendants on Jones's claims for false arrest, malicious prosecution, and denial of the right to fair trial.

B.   *Seizure of Hippolyte, Nelson, and Jeanty*

Plaintiffs' next set of objections not only repeats arguments raised before the magistrate

9

judge, it restates, *verbatim*, the exact language of their underlying opposition brief. *Compare* Pls.' Obj. at 10-15, *with* Dkt. 120 ("Opp'n") at 13-17; *and* Pls.' Obj. at 14, *with* Opp'n at 16. Objections seeking to relitigate arguments rejected by the magistrate judge do not constitute proper objections, and, as a result, are subject to clear error review. *See* R&R at 59 n.8 (addressing arguments raised again on objection).

In this objection, plaintiffs do not challenge any factual findings, but dispute Judge Scanlon's conclusion that, as a matter of law, the initial seizure of Hippolyte, Nelson, and Jeanty was proper because they were found in the immediate vicinity of the searched apartments. R&R at 58; Pls.' Obj. at 9-10. Plaintiffs agree that the legality of such seizures is governed by the Supreme Court's precedent in *Bailey v. United States*, 568 U.S. 186, 201, 133 S. Ct. 1031, 185 L. Ed. 2d 19 (2013), which imposes a spatial constraint limited to "the immediate vicinity of the premises to be searched" on detentions incident to the execution of a search warrant, as permitted by *Michigan v. Summers*, 452 U.S. 692, 101 S. Ct. 2587, 69 L. Ed. 2d 340 (1981). They contend, however, that the *Summers* rule, and, by extension, the *Bailey* rule, is inapplicable to non-residents. Pls.' Obj. at 11.

In *Summers*, the Supreme Court held that "a warrant to search for contraband founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted." *Summers*, 452 U.S. at 705. *Bailey* limited *Summers* to the immediate vicinity of the searched premises, without explicitly defining "immediate vicinity." However, in *Bailey*, the Court concluded that the detainee's location a mile away from the site of the search stretched "beyond any reasonable understanding of the immediate vicinity of the premises in question." *Bailey*, 568 U.S. at 201. *Bailey* identified a number of factors courts should consider in determining whether an individual fell within the

10

"immediate vicinity" of the searched premises, "including the lawful limits of the premises, whether the occupant was within the line of sight of his dwelling, [and] the ease of reentry from the occupant's location." *Id.*

As recounted in the R&R, there are a number of undisputed facts supporting Judge Scanlon's ultimate conclusion that Hippolyte, Nelson, and Jeanty were seized "within the immediate vicinity of the Premises." R&R at 62. It is undisputed that, at the time of the seizure, Hippolyte and Nelson were standing in an alley behind the backyard of the apartments, and Jeanty in a side alley abutting the premises. *Id.* at 17. Although neither party has submitted a map of the area, there is no dispute that the entrance to the basement apartment was located in the backyard, which adjoined the back alley, and that ESU and BSGS had to travel through the side alley to reach the basement apartment from the first-floor apartment. *See id.* at 5 (describing building layout); *id.* at 16-17 (describing outside arrests). The scope of the search warrant covered both the first-floor and basement apartments, and the warrant included, in its summary of the covered premises, a description of the route to be taken from the first-floor apartment to the basement apartment, *i.e.*, through the side alley and into the back of the building. *Id.* at 6, 17-18; *see also* Dkt. 117-26 (Defs.' Ex. Z (search warrant)). It is also undisputed that a group of individuals, including but not limited to Hippolyte, Nelson, and Jeanty, were outside when the police arrived, and that several other individuals from that group ran into the basement apartment, suggesting they were in the immediate vicinity of the entrance. R&R at 19. The Court concludes, therefore, that ESU's initial seizure of Hippolyte, Nelson, and Jeanty occurred within the immediate vicinity of the searched premises and was proper under *Summers* and

11

*Bailey*.[10]

In their final attack on Judge Scanlon's R&R on this issue, plaintiffs rehash the argument that "their continued detention beyond the few minutes needed to effectuate the purpose of their seizure (*i.e.*, ESU's entry into the premises and the securing of the two apartments) cannot be justified." Pls.' Obj. at 14; *see also* Opp'n at 16. They do not challenge Judge Scanlon's observation that there remains an open dispute of fact as to how long they were detained. *See* R&R at 62. The record suggests, as Judge Scanlon found, that the detention ranged anywhere from less than 30 minutes, *i.e.*, the length of time it took the ESU to secure both apartments, up to four hours. *Id.* at 58-59. Accordingly, this fact dispute, upon which the question of reasonableness turns in part, precludes the entry of summary judgment in any party's favor.[11]

II.  BSGS Defendants' Objections

The bulk of the BSGS defendants' objection rests on the argument that the R&R overlooked certain facts establishing arguable probable cause for the basement arrests on charges of marijuana possession.[12] Specifically, NYPD found several pounds of packaged marijuana in

---

[10] To their detriment, plaintiffs rely almost exclusively on case law from outside this circuit, whose interpretations of *Summers* are not binding here. The sole case plaintiffs cite from this circuit is clearly distinguishable in terms of the detainee's location with respect to the searched property. *See Cabral v. City of New York*, No. 12-CV-4659 (LGS), 2014 WL 4636433, at *4 (S.D.N.Y. Sept. 17, 2014) ("Plaintiff was inside a vehicle that was '[a]round the block' from the apartment . . . not within the line of sight, and access to the apartment presumably would have required passage through at least one if not two doors."), *aff'd*, 662 F. App'x 11 (2d Cir. 2016).

[11] For the same reasons, defendants' objection that they are entitled to qualified immunity for the detention of the "outside" plaintiffs also fails. *See* Defs.' Obj. at 5-6.

[12] In the interest of clarity, the Court notes that this objection is limited to the claims arising out of the arrests for marijuana possession; on objection, the BSGS defendants do not challenge the R&R's identification of factual disputes regarding probable cause for the arrests on other charges, including firearm possession. *See* Defs.' Obj. at 5 (lodging objection specific to claims based on "plaintiffs' arrests and prosecutions for constructive possession of marijuana").

the basement apartment, as well as marijuana plants in plain view in one of the bedrooms; the apartment smelled of marijuana; and the lack of furnishings suggested that it was used primarily for drug transactions. Defs.' Obj. at 2-5. This evidence, defendants contend, shows that the basement arrests were not based on the individuals' mere presence in a residence that happened to contain hidden contraband, but on their complicity in obvious criminal activity, which may be sufficient to support constructive possession charges regardless of whether they were residents or visitors. *See United States v. Heath*, 455 F.3d 52, 57 (2d Cir. 2006) ("[T]hose who are permitted to observe obvious criminal activity in a home are, absent indications to the contrary, likely to be complicit in the offense."); *but see United States v. Rodriguez*, 392 F.3d 539, 548 (2d Cir. 2004) (noting that individual's mere proximity to contraband does not establish constructive possession).

As an initial matter, defendants overstate the degree to which the record reflects indicia of criminal activity in the basement. Although several marijuana plants were found in plain view in the bedroom, the packaged marijuana recovered by police would not have been visible to visitors, as it was stored in closets in a bedroom and living room as well as a backpack in a bedroom. *See* Dkt. 119-5 (Defs.' Ex. EEE) at 3; Dkt. 119-4 (Defs.' Ex. DDD); Ortiz Dep. Tr. at 198-99. As for the furnishings, defendants contend that "there were no beds found inside the location, as well as minimal furnishings, no personal belongings save for a backpack, a water bottle, and a pile of clothes in the basement unit." Defs.' Obj. at 3.

Surely, in an unintended twist, this objection only seems to highlight the depths of the genuine dispute of material fact that emerges on this point. Plaintiffs testified in their

depositions that the basement apartment was furnished throughout.[13] *See* Dkt. 117-18 (Defs.' Ex. R (McLeod Dep. Tr.)) at 36-37; Dkt. 117-8 (Defs.' Ex. H (Thomas Dep. Tr.)) at 58. No photograph or other evidence has been offered. Altogether, these evidentiary facts do not demonstrate, without genuine dispute one way or the other, that any visitors to the basement apartment were complicit in obvious criminal activity, in light of the manner in which most of the drugs were hidden and the conflicting evidence as to whether the apartment appeared to be a hub for drug distribution. *See, e.g., United States v. Facen*, 812 F.3d 280, 287 (2d Cir. 2016) (listing factors for constructive possession analysis, including whether the individual was resident or visitor to the location where contraband was discovered and whether contraband was discovered in plain view); *Miyares v. City of New York*, No. 11-CV-4297 (RJS), 2013 WL 3940816, at *4 (S.D.N.Y. July 31, 2013) (holding that officers failed to show probable cause for plaintiff's arrest based on trafficking activity at boyfriend's apartment since "[w]ithout some factual record that Plaintiff saw the drugs, witnessed sales, or otherwise learned about trafficking, her mere presence in the apartment . . . on the morning in question is no more consistent with knowledge of drug activity than it is with ignorance").

Even if reasonable officers could disagree as to the significance of this evidence, because the record does not establish plaintiffs' exact locations when ESU entered the premises, as Judge Scanlon determined in recommending that this branch of the BSGS defendants' summary judgment motion be denied, a finding of arguable probable cause is precluded. The basement

---

[13] Similarly, although defendants assert that the first-floor apartment was not furnished, plaintiffs insist that it was. *Compare* Ortiz Dep. Tr. at 121, *with* Dkt. 122-14 (Pls.' Ex. 14 (Sealey Dep. Tr.)) at 77-79.

arrestees allege that they either ran into the basement from the outdoor area right as ESU arrived and were seized in the hallway, where no contraband was found in plain view; were seized outside and transported into the basement apartment by ESU; or were ordered into the basement apartment from the backyard by ESU. R&R at 34-35. As Judge Scanlon observed in the R&R, without challenge by an objection from defendants, the record also lacks evidence concerning whether BSGS had information as to these movements prior to making the arrests, and, more importantly, whether they made a reasonable inquiry to ESU to obtain such information. *Id.* at 36.

All in all, the record does not even show that the basement arrestees were found by ESU in proximity to marijuana, much less that they exercised dominion and control or had constructive knowledge sufficient to establish arguable probable cause for constructive possession charges. Consequently, in light of these genuine disputes of material fact after *de novo* review, the Court affirms Judge Scanlon's recommendation that defendants are not entitled to qualified immunity at this stage and that summary judgment on the ground of qualified immunity must, at this point, be denied.

III. <u>Remainder of R&R</u>

As for the remainder of the R&R, to which no timely written objection has been lodged by any party, clear-error review applies. *See Dafeng Hengwei Textile Co. v. Aceco Indus. & Commercial Corp.*, 54 F. Supp. 3d 279, 283 (E.D.N.Y. 2014). Having carefully reviewed the remainder of the R&R in accordance with this standard, the Court finds it to be correct, well-reasoned, and free of any clear error. Therefore, this portion and the balance of the R&R are adopted as the opinion of the Court.

## Conclusion

In line with the foregoing, the R&R is adopted, in its entirety, as the opinion of the Court. The moving plaintiffs' motion for partial summary judgment is denied. The BSGS defendants' motion for summary judgment is granted as to Jones, but otherwise denied. Jones's claims are dismissed.

Recapitulating, the following claims survive:

- the false arrest claims against the BSGS defendants, asserted by all remaining plaintiffs;
- the malicious prosecution and denial of the right to fair trial claims against the BSGS defendants, asserted by Thomas, Sears, Alcindor, Nyack, Cox, Dewar, Aime, Leemow, Fray, Browne, and McLeod; and
- the false arrest and malicious prosecution claims against Officer Skelton, asserted by Fray.

The parties are directed to Judge Scanlon for further pre-trial management, including for a determination as to whether Alishea Walters has abandoned her claims, *see supra* note 1, and the scheduling of settlement and pre-trial conferences as to the remaining parties.

So Ordered.

Dated: Brooklyn, New York
       July 4, 2019

                                    /s/ USDJ ERIC N. VITALIANO
                                    ERIC N. VITALIANO
                                    United States District Judge