7UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------- x

TEVON THOMAS, et al.,

                      Plaintiffs,

           -against-

JOEBIAN ORTIZ, et al.,

                    Defendants.

:
:
:
:
:
:
:
:
:
:
:
:

<u>SHORT-FORM</u>
<u>MEMORANDUM & ORDER</u>
14-cv-7513 (ENV) (VMS)

----------------------------------------------------------- x
----------------------------------------------------------- x

HAROLD BROWNE, et al.,

                    Plaintiffs,

           -against-

JOEBIAN ORTIZ, et al.,

                    Defendants.

:
:
:
:
:
:
:
:
:
:

16-cv-4224 (ENV) (VMS)

----------------------------------------------------------- x

VITALIANO, D.J.

      Jury selection in this matter was scheduled for March 30, 2020.  In anticipation of trial,

the parties submitted various motions *in limine*.  Due to the disturbance caused by the COVID-19

pandemic, the trial was adjourned without date.  The motions are resolved in the manner and for

the reasons set forth below.

| I.   Plaintiffs' Motions *in Limine* | |
| --- | --- |
| <u>Request</u> | <u>Ruling</u> |
| (A) Plaintiffs seek to preclude defendants from introducing evidence concerning plaintiffs' financial status and employment | (A) As defendants do not intend to introduce evidence of plaintiffs' financial status or job history, unless plaintiffs open that door by testifying about economic damages, plaintiffs' |

| | |
|---|---|
| history.  Dkt. 146, Pls.' Mem., at 9–10.[1] | motion is denied as moot.  However, defendants alert the Court to evidence relating to certain plaintiffs' employment that is proffered as relevant to establish a relationship between them and their activities leading up to their arrest.  Dkt. 151, Defs.' Opp'n at 3.  To the extent defendants intend to offer such evidence, defendants will, not later than two weeks prior to trial, specify the evidence they intend to adduce for this purpose and make a showing as to its probative value. |
| (B) Plaintiffs concede that plaintiff Ravin Cox's 2011 conviction for Aggravated Unlicensed Operation of a Motor Vehicle in the First Degree was a felony conviction that passes the standard of admissibility under Rule 609(a)(1)(A), but they move to preclude defendants from impeaching Cox with it on staleness grounds and in light of its prejudicial effect.  Pls.' Mem. at 12. | (B) Defendants intend only to introduce evidence of the nature of Cox's and Thomas's convictions, Defs.' Opp'n at 5–6, and, therefore, plaintiffs' motion as to other felony or misdemeanor convictions is denied as moot.      A felony conviction of a witness in a civil case, it is widely understood, is admissible, but subject, of course, to the |

---

[1] All citations to pages refer to the Electronic Case Filing System ("ECF") pagination.

Similarly, although they acknowledge the 2018 homicide conviction of Tevon Thomas—whom they do not anticipate calling as a witness—is admissible under Rule 609, they seek to bar defendants from calling him as a witness, and impeaching him with his conviction, under Rule 403. *Id.* at 12–13; 22–23. Finally, they move to preclude defendants from introducing plaintiffs' misdemeanor convictions, and the felony convictions of plaintiffs Gary Jeanty, David Alcindor, and Milton Sears, which are over ten years old and which did not involve crimes of dishonesty. *Id.* at 13–17.

balancing strictures of Rule 403. Fed. R. Evid. 609(a)(1)(A). Admissibility under Rule 403 depends on "(1) the impeachment value of the prior crime, (2) the remoteness of the prior conviction, (3) the similarity between the past crime and the conduct at issue, and (4) the importance of the credibility of the witness." *Stephen v. Hanley*, No. 03-cv-6226 (KAM) (LB), 2009 WL 1471180, at *4 (E.D.N.Y. May 21, 2009).

Put plainly, plaintiffs have not shown, and it is their burden to do so, that these factors weigh in favor of granting their motion. As to Cox, his conviction, as a felony, has at least some probative value for veracity, *see Jean-Laurent v. Hennessy*, 840 F. Supp. 2d 529, 544 (E.D.N.Y. 2011), but the crime was not one of dishonesty—a fact that cuts against admission. *Cf. United States v. Brown*, 606 F. Supp. 2d 306, 313 (E.D.N.Y. 2009) (illegal firearm possession involves neither untruthfulness nor deception, which counsels against admission). On the other

edge of the sword, though, because the conduct at issue and Cox's conviction have little in common, the jury is less likely to be confused or unduly prejudiced by its introduction.  *Jean-Laurent*, 840 F. Supp. 2d at 544.  Furthermore, as Cox is attempting to convince the jury of his version of events on the night of his arrest, the jury's assessment of his credibility is critical to its reaching a verdict as to his claim.  In other words, that sort of impact on a jury is not unduly prejudicial.  Finally, applicable case precedent strongly suggests that a conviction that is close to, but not quite ten years in age, such as Cox's nine-year-old felony, is not prejudicially stale.  *See Jones v. City of New York*, No. 98-cv-6493 (LBS), 2002 WL 207008 (S.D.N.Y. Feb. 11, 2002); *see also Hartman v. Snelders*, No. 04-cv-1784, 2010 WL 11626508, at *10–11 (E.D.N.Y. Jan. 28, 2010) (analyzing convictions for which less than ten years had elapsed as "recent").  Because the evidentiary arguments advanced

by plaintiffs, at best, show that only two of the factors weigh against admission, and, at that, only somewhat, and counterpointed by factors weighing strongly in favor of admission, the Court cannot conclude the probative value of the conviction is "*substantially* outweighed" by any prejudicial effect.  Fed. R. Evid. 403 (emphasis added).

Even more compelling are defendants' grounds to admit Thomas's homicide conviction.  Concededly, a homicide conviction is more prejudicial than Cox's motor vehicle conviction, and it does not involve dishonesty.  However, the recency of Thomas's conviction, only two-years-old, and the fact that he is a plaintiff who will seek to persuade the jury to credit his version of events, weigh heavily in favor of admission.  *See Jean-Laurent*, 840 F. Supp. 2d at 544.  In light of these realities, to find his homicide conviction is inadmissible in this case because of its prejudicial effect would, for all intents and purposes, be to hold that a homicide

conviction is *never* admissible under Rule 609.  The Rule could have quite easily and quite precisely been written to say exactly that, but it was not.  The Court declines to re-write the Rule in this fashion.  Since truly, the only factor plaintiffs advance is the prejudicial aspect of the jury's assessment of the testimony of a witness impeached by his homicide conviction, the motion to bar such impeachment is denied.

But, there is a caution flag.  To mitigate the prejudicial impact of such evidence, defendants are cautioned not to engage in any examination of Thomas that might elicit testimony as to the underlying facts of the conviction.

Lastly, that plaintiffs do not intend to call Thomas as a witness has no bearing on the impeachment value of his conviction should he be called to testify by defendants.  Bluntly, whether plaintiffs want to shield Thomas from the jury, he is a highly relevant witness regarding his claims against

| | defendants, and defendants are well-within their rights to call him in this case.  *See* Fed. R. Civ. P. 45(c)(1)(B)(i); *see also* Fed. R. Evid. 607 & advisory committee's note to 1972 Proposed Rules (abandoning rule against impeaching one's own witness). Whether they decide to do so is merely a matter of trial strategy, since the impeachment of Thomas with his homicide conviction is permissible regardless of who calls him.  The motion to bar defendants from calling Thomas to testify and, if called as a witness, to bar his impeachment with his 2018 homicide conviction, is denied. |
|---|---|
| (C) Plaintiffs seek to preclude defendants from introducing plaintiffs' criminal histories, including Exhibits K–R, which are copies of plaintiffs' "rap sheets," arguing their prejudicial effect is disproportionate to any probative value as to damages.  Pls.' Mem. at 17–18.  In the alternative, they argue that the | (C) In their motion, plaintiffs grasp, correctly, that evidence that a plaintiff has been arrested and incarcerated, even for misdemeanors, and even in the absence of conviction, is relevant on the question of claimed emotional damages in a lawsuit for wrongful incarceration.[2]  *See Cicero v. City of New* |

[2] As held in II(A), *infra*, plaintiffs' fair trial and malicious prosecution claims cannot proceed, as the prosecutions against them did not terminate favorably, and they seek to impugn the very

| | |
|---|---|
| Court should bifurcate the liability and damages phases of the trial. *Id.* at 19. | *York*, No. 11-cv-0360 (NGG), 2011 WL 3099898, at *4 (E.D.N.Y. July 25, 2011). Such claims may be challenged here since defendants draw attention to portions of certain plaintiffs' deposition testimony in which they contend their arrests and subsequent detentions led them to fear small spaces and police officers, or that they suffer from flashbacks.  Defs.' Opp'n at 3. <br><br>          Clearly, evidence that these plaintiffs have been previously arrested or incarcerated may inform the jury's assessment of the extent of emotional harm.  *See Wisdom v. Undercover Police Officer #C0127*, 879 F. Supp. 2d 339, 342 (E.D.N.Y. 2012) (admitting evidence of prior arrests, but not the underlying facts, to aid the jury in its damages finding); *Phillips v. City of New York*, 871 F. Supp. 2d 200, 207 (E.D.N.Y. 2012) (evidence of prior arrests and incarceration relevant to emotional damages).<br>          Yet, the reasoning of such decisions |

grounds supporting the charges against them.

must be parsed.  The fact that a plaintiff previously arrested or incarcerated is claiming emotional damages on account of a wrongful arrest is extremely relevant, while the reasons for the previous arrest can be quite prejudicial.  *See Ramos v. Cty. of Suffolk*, 707 F. Supp. 2d 421, 424 (E.D.N.Y. 2010).  Accordingly, in light of the inherently prejudicial nature of a previous conviction, defendants shall be permitted, for these purposes, to introduce evidence regarding only the number of times each plaintiff was arrested and the length of each period of detention or incarceration in a jail cell.  To facilitate such evidence, a plaintiff's rap sheet may be used to refresh a witness's recollection but shall not be admitted.  (Any failures of recollection will be handled during trial.)  Furthermore, by mitigating any prejudicial effect in this manner, bifurcation will not be necessary.

     Of course, should plaintiffs withdraw their claim for emotional injuries, as they

| | have signaled, *see* Pls.' Mem. at 19–21, defendants may not introduce any evidence of plaintiffs' prior arrests or the period incarceration for the purpose of controverting damages. |
|---|---|
| (D) Plaintiffs seek to preclude defendants from calling Tevon Thomas as a witness to elicit testimony as to his recent conviction for homicide, arguing such a tactic would lead to a distortion of Rule 609.  Pls.' Mem. at 22–23. | (D) As discussed in I(B), *supra*, defendants may call Tevon Thomas as a witness, even if their primary motivation is to impeach the credibility of the claim he makes in his complaint.  *See Patrick v. City of Detroit*, 906 F.2d 1108, 1113, 30 Fed. R. Evid. Serv. 1252 (6th Cir. 1990) (affirming the right, under Federal Rule of Evidence 607, to impeach an adverse party after calling him as a witness). Indeed, as further explained in I(B), *supra*, defendants would be well within their right to impeach Thomas with his homicide conviction under Federal Rule of Evidence 609, which clearly permits such impeachment, should he take the stand of his own volition.  That plaintiffs seek to insulate Thomas from exposure to his homicide conviction is uncompelling, and plaintiffs |

| | |
|---|---|
| | offer no case law supporting their position. The motion, therefore, is denied. |
| (E) Plaintiffs seek to preclude defendants from introducing plaintiffs' prior lawsuits. Pls.' Mem. at 24–25. | (E) Since defendants concede they do not seek to introduce evidence of plaintiffs' prior lawsuits, Defs.' Opp'n at 2, the motion is denied as moot. |
| (F) Plaintiffs seek to preclude defendants, on the basis of a prior ruling, from introducing defendants' Exhibit JJ, which contains audio recordings of certain plaintiffs' telephone calls from Rikers Island during their incarceration, noting that Magistrate Judge Vera M. Scanlon has already ordered that defendants are precluded from using the recordings in their case-in-chief and for impeachment purposes.  Pls.' Mem. at 25–27. | (F) The Court will not disturb the preclusion order entered as a sanction against defendants relating to apparent misconduct in the course of discovery.  The motion, therefore, is granted.  If, however, defendants represent at trial that testimony offered by a witness conflicts with the recordings in Exhibit JJ, defendants will be permitted at that time to make an offer of proof to that effect.  The Court will then consider whether any plausibly false statement, made under oath in open court, merits reference to the United States Attorney and/or disciplinary action.  In any event, at trial, all other tools of impeachment will remain available with respect to such testimony. |
| (G) Plaintiffs move to preclude defendants | (G) Inescapably, the presence of marijuana at |

| | |
|---|---|
| from inquiring into plaintiffs' use or familiarity with marijuana.  Pls.' Mem. at 27–28. | the scene—both fresh and burned—plays a central role in the events on the night of the arrest.  That no marijuana was recovered from any plaintiff's person, nor was any plaintiff charged with actual marijuana possession, does nothing to alter the reality of the presence of marijuana at the scene.  This is not to say, however, that plaintiffs' subjective familiarity with marijuana could have informed the arresting officers' probable cause determination at the time of arrest. |
| | In this light, defendants are free, on cross-examination, to question a testifying plaintiff as to any such familiarity if, as defendants predict, he denies, on direct examination, smelling or observing any marijuana on the premises.  Such elicited testimony, while possibly prejudicial, does not rise to a level inadmissible under Rule 403. |
| | To that extent, plaintiffs' motion is denied.  Otherwise, defendants may not inquire about any plaintiff's familiarity with |

| | |
|---|---|
| | marijuana.[3] |
| (H) Plaintiffs move to preclude defendants from introducing any evidence suggesting plaintiffs have any gang affiliation.  Pls.' Mem. at 28–30. | (H) Given that defendants do not intend to offer such proof, *see* Defs.' Opp'n at 10, plaintiffs' motion is denied as moot.<br><br>        Defendants do, however, intend to introduce evidence that the house in question was being used as a gang house to give context to the reason for the raid and certain precautions the officers took.  *See id.* Importantly, in the course of offering such proof, defendants may not attempt to tie any plaintiff to a gang or argue that the evidence establishes their gang membership.  Mere presence at a gang location does not make the person present a gang member. |
| (I) Plaintiffs move to preclude defendants from eliciting testimony about the defendants' military service, community service, civic service or commendations.  Pls.' Mem. at 30–31. | (I) As defendants do not intend to introduce evidence or elicit testimony about defendants' military service, community service, civic service or commendations, Defs.' Opp'n at 2, plaintiffs' motion is denied as moot. |

---

[3] However, if such testimony is elicited, plaintiffs may, at trial, propose, for the Court's consideration, a limiting instruction to mitigate any perceived risk that the jury could conflate plaintiffs' familiarity with marijuana with an objective, *ex ante* assessment of probable cause.

| II.   Defendants' Pretrial Motion and Motion *in Limine* | |
|---|---|
| <u>Request</u> | <u>Ruling</u> |
| (A) Although included in their motions *in limine*, defendants first move to dismiss plaintiffs' claims for malicious prosecution and denial of a right to fair trial in light of the Second Circuit's holding in *Lanning v. City of Glens Falls*, 908 F.3d 19 (2d Cir. 2018) and the Supreme Court's holding in *McDonough v. Smith,* 139 S. Ct. 2149, 204 L. Ed. 2d 506 (2019).[4]  Dkt. 148, Defs.' Mem., at 10–15. | (A) The dismissal of plaintiffs' fair trial and malicious prosecution claims is mandated by *McDonough*.  As this Court recently held in the context of an adjournment in contemplation of dismissal ("ACD"): |
| | In light of *McDonough* . . . the nature of a fair trial claim must be scrutinized at its outset. Undoubtedly, as the Supreme Court recognized, certain categories of fair trial claims do not challenge probable cause in a manner threatening the validity of any conviction or sentence.  But criminal defendants may no longer aim their axes, by civil lawsuit, at the trunk of ongoing criminal proceedings, for such actions risk collaterally felling them. With this in mind, and with recognition that, in the absence of an ongoing prosecution, the traditional reach of the *Heck* [*v. Humphrey*] rule [prohibiting collateral attack of an outstanding criminal judgment] does not squarely implicate ACDs, *McDonough*, still, by the force of its reasoning, compels revisiting the effect of an acceptance of an ACD on one's later ability |

---

[4] The Court, in its discretion, will consider defendants' motion, which, ordinarily, would be untimely.

to bring certain fabricated-evidence fair trial claims.

*Miller v. Terrillion*, — F. Supp. 3d —, No. 16-cv-52 (ENV) (RLM), 2020 WL 549356, at *6 (E.D.N.Y. Jan. 30, 2020) (internal citation omitted).  As a result, the Court held that a plaintiff is barred from bringing a fair trial claim "[that] targets the very evidence that would have otherwise been shielded from collateral attack," and "the success of which would necessarily undermine the validity of a prosecution."  *Id.* at *6 (citing *Lanning*, 908 F.3d at 26).  Here, plaintiffs' criminal prosecutions were dismissed on the Assistant District Attorney's motions, rather than upon the acceptance of ACDs.  Nevertheless, plaintiffs attack the very foundation of the prosecutions against them by alleging "it is undisputed that the plaintiffs—other than Nelson, Hippolyte, and Jeanty—were seized, jailed, and prosecuted as a result of the charges that flowed from [the allegedly misleading information forwarded to prosecutors]."  Pls.' Opp'n at 13.  Because, as

| | |
|---|---|
| | discussed above, the prosecutions against them were not terminated favorably, they cannot now bring a fair trial claim based upon allegedly fabricated evidence.  Defendants' motion, consequently, is granted.[5] |
| (B) Defendants move to preclude plaintiffs from referring to defendants' attorneys as city attorneys.  Defs.' Mem. at 15–16. | (B) Defendants' motion is granted to the extent that plaintiffs may not refer to defense counsel as "City Attorneys."  However, to maintain a level playing field, the jury will be instructed once, at the beginning of trial, that "Defendants are represented by attorneys from the Office of the New York City Corporation Counsel because they are members of the New York City Police Department, which is an agency of the City of New York."  *See Jean-Laurent*, 840 F. Supp. |

---

[5] In *Gondola v. City of New York*, No. 16-cv-369 (AMD) (SJB), 2020 WL 1433874, at *3 n.5, *4 (E.D.N.Y. Mar. 24, 2020), the district court cited favorably to the reasoning in *Miller* to discuss fair trial claims in the identical posture as here.  *See also Daniels v. Taylor*, No. 18-cv-3717 (RA), 2020 WL 1165836, at *5–6 (S.D.N.Y. Mar. 11, 2020) (holding that, in light of *McDonough*, an ACD bars fair trial claims based on fabrication of evidence).  The *Miller* reasoning, however, was rejected in *Simon v. City of New York*, No. 16-cv-1017 (NGG) (RML), 2020 WL 1323114, at *5 (E.D.N.Y. Mar. 19, 2020), with the district court criticizing the reasoning as eliminating the distinction between fair trial and malicious prosecution claims. Respectfully, the issue is not whether *Miller*'s reasoning erodes or even eliminates the distinction between such claims, it is whether *McDonough* compels a plaintiff pleading a fair trial claim to show that the prosecution ended in his favor on the question of guilt or innocence.  *McDonough* does compel such pleading, and plaintiffs here fail to do so.

| | |
|---|---|
| | 2d at 550; *Nnodimele v. Derienzo*, No. 13-cv-3461 (ARR) (RLM), 2016 WL 3561708, at *3 (E.D.N.Y. June 27, 2016). |
| (C) Defendants move to preclude plaintiffs from offering into evidence or suggesting to the jury that the city may indemnify defendants.  Defs.' Mem. at 16–18. | (C) Defendants' motion is granted to the extent plaintiffs will not be permitted to refer to or suggest the possibility that the City will indemnify defendants.  If, however, any defendant opens the door by offering argument or evidence of his limited financial capacity, plaintiffs may move for reconsideration of this ruling.  *See Anderson v. Aparicio*, 25 F. Supp. 3d 303, 314 (E.D.N.Y. 2014), *aff'd and remanded sub nom. Anderson v. Cty. of Suffolk*, 621 F. App'x 54 (2d Cir. 2015); *cf. Provost v. City of Newburgh*, 262 F.3d 146, 163–64 (2d Cir. 2001). |
| (D) Defendants move to preclude plaintiffs from requesting a specific dollar amount from the jury.  Defs.' Mem. at 18–19. | (D) The motion is denied, but plaintiffs will be allowed, and at that, solely in the context of closing argument, to make a statement as to what liability the evidence has established, what damages it has caused and to submit a specific dollar amount they contend is |

| | |
|---|---|
| | reasonable compensation for their loss.  The Court will instruct the jury that statements by lawyers in closing are nothing more than argument.  *See Edwards v. City of New York*, No. 08-cv-2199 (TLM), 2011 WL 2748665, at *2 (E.D.N.Y. July 13, 2011); *see also Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 912 (2d Cir. 1997). |
| (E) Defendants move to preclude plaintiffs from mentioning or offering into evidence the NYPD police student guide, NYPD patrol guide, or other police department guidelines, trainings, and procedures, arguing any alleged violations of such guidelines are either irrelevant or inadmissible under Rule 403. Defs.' Mem. at 19–20. | (E) Defendants are correct that the NYPD rules and procedures set forth in the patrol guide do not establish constitutional standards, and violations of them cannot form the basis for a finding of liability.  *See Brown v. City of New York*, 798 F.3d 94, 106 (2d Cir. 2015); *Cerbelli v. City of New York*, No. 99-cv-6846 (ARR) (RML), 2008 WL 4449634, at *10 (E.D.N.Y. Oct. 1, 2008).  Plaintiffs acknowledge this reality, but they argue that any such guidelines are helpful to understand the course of conduct of a reasonable officer under the circumstances. Pls.' Opp'n at 15–17.  They also argue they intend to use such evidence to impeach a testifying defendant as |

| | to whether his conduct "would comport or conflict with NYPD rules and regulations." *Id.* at 17.<br><br>      The Court agrees with plaintiffs that evidence of "sound professional standards governing a defendant's actions can be relevant and helpful." *Nnodimele v. Derienzo*, No. 13-cv-3461 (ARR) (RLM), 2016 WL 3561708, at *14 (E.D.N.Y. June 27, 2016) (quoting *Jimenez v. City of Chicago*, 732 F.3d 710, 721 (7th Cir. 2013)).  As a result, plaintiffs may use the NYPD procedure or patrol guidelines to impeach defendants, should they testify, but only to the extent that any act or omission that is the subject of a testifying defendant's account is contrary to NYPD rules, practices or procedures.  The motion is otherwise granted. |
|---|---|
| (F) Defendants move to preclude plaintiffs from inquiring into the disciplinary history of defendants or any non-party officer, or any lawsuits against them.  Defs.' Mem. at 21–24. | (F) Plaintiffs advise that they do not intend to introduce evidence that any of the defendants engaged in other, similar misconduct other than conduct that speaks directly to veracity.  *See* Pls.' Opp'n at 17–18.  Defendants' |

|  | motion, therefore, is denied as moot, but may be renewed at trial should plaintiffs seek to proffer any prior conduct of a defendant-witness, even should plaintiffs claim the conduct speaks only to veracity and defendants have a good-faith basis to support an argument to the contrary. |
|---|---|
| (G) Defendants seek to preclude plaintiffs from referencing allegations of misconduct against other police officials or events in the news, or using inflammatory terms to describe police activity.  They further seek to bar plaintiffs from using terminology such as "testilying" and "blue wall of silence" as highly prejudicial and inflammatory.  Defs.' Mem. at 25–26. | (G) Plaintiffs do not intend to introduce evidence about unrelated events concerning other police departments or officers.  *See* Pls.' Opp'n at 18–19.  Accordingly, to that extent, the motion is denied as moot.  With respect to defense concerns about the use of largely inflammatory statements by counsel, including the terms referenced in the motion, such inflammatory language will not be used by either side.  Obviously, any argument about credibility that is not inflammatory and is supported by the record is fair game.  To that extent, the motion is granted. |
| (H) Defendants seek to preclude plaintiffs from introducing evidence about dismissed claims or settlement, plaintiffs' Proposed | (H) Based on representations by plaintiffs that they do not intend to offer evidence as to prior settled claims, *see* Pls.' Opp'n at 19–20, to |

| | |
|---|---|
| Exhibit 22 (an intake form related to all arrestees, including those who have settled), and plaintiffs' Proposed Exhibit 38 (a form in which the District Attorney declined to prosecute proposed witness and former plaintiff Dwayne Jones).  Defs.' Mem. at 26–27. | that extent the motion is denied as moot.  As for the exhibits, because plaintiffs intend to redact both proposed exhibits to cure any issues relating to non-parties, *see* Pls'. Opp'n at 19–20, decision on their admissibility as redacted is reserved until their proffer. |
| (I) Defendants move to reserve their rights to file supplemental motions *in limine*.  Defs.' Mem. at 27. | (I) Denied.  The time to file *in limine* motions has long come and gone.  To the extent that any party believes that a matter requires urgent consideration, they may file a pre-motion letter seeking the Court's permission to file such a motion. |

So Ordered.

Dated:   Brooklyn, New York
        May 1, 2020

/s/ Eric N. Vitaliano
ERIC N. VITALIANO
United States District Judge